No. 2--98--0766 

_________________________________________________________________

15 July 1999

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

THE PEOPLE OF THE STATE OF ) Appeal from the Circuit Court

ILLINOIS, ) of McHenry County. 

)

Plaintiff-Appellant, ) No. 98--CF--262

) 

v. )

)

JUAN CARLOS LEON, ) Honorable

) Thomas A. Schermerhorn,

Defendant-Appellee. ) Judge, Presiding.

_________________________________________________________________

JUSTICE GEIGER delivered the opinion of the court: 

The State appeals the June 15, 1998, order of the circuit court denying the State's motion for leave to file an additional supplement to its answer to discovery prior to the trial of the defendant, Juan Carlos Leon.  The criminal trial was scheduled for June 22, 1998.  Since the effect of the order is to suppress certain evidence, the State appeals pursuant to Supreme Court Rule 604(a)(1) (145 Ill. 2d R. 604(a)(1)) and has filed a certificate of impairment.  The State argues that the trial court abused its discretion in applying a harsh discovery sanction by denying the State's motion to supplement its discovery answer, striking certain discovery materials tendered by the State after June 3, 1998, and prohibiting the State from eliciting testimony or evidence stemming from certain reports tendered to defense counsel after that date.  We affirm. 

The record discloses that the North Central Narcotics Task Force initially filed a criminal complaint charging defendant with unlawful criminal drug conspiracy following his arrest on March 2, 1998.  Defendant was then indicted on March 19, 1998, with unlawful criminal drug conspiracy and unlawful delivery of a controlled substance (cocaine) (720 ILCS 570/401(a)(2)(D), 405.1 (West 1998)). Codefendants and coconspirators Andres Garcia and Jaime Rodriguez were charged in the same indictment.  

On March 6, 1998, the defendant made a demand for a speedy trial.  On March 23, on the defendant's motion, the court entered a “Reciprocal Order For Disclosure” listing discoverable materials and information, ordering the State to comply with the order on or before April 6, 1998, and ordering prompt disclosure of any matter discovered after compliance with this order.  Defense counsel was ordered to comply with discovery, subject to any  constitutional limitations, on or before April 13, 1998.   It was further ordered that all motions, waivers, and demands be made in open court, and the matter was set for April 17, 1998, for jury trial status.

The State filed its answer to the discovery motion stating that it was tendering a list of 26 names of persons who may be called as witnesses; a copy of a 34-page police report, which included the substance of any oral statement made by defendant; and grand jury minutes.  The State noted that it was unaware of any statements or reports of experts made in connection with the case at the time but had certain unspecified tangible evidence available for viewing.  The State also noted that it had no material or information that would tend to negate the guilt of the accused.  On  the State's motion, the cause was continued to April 24, 1998, when the jury trial was set for May 4, 1998.  

On April 30, 1998, the State's Attorney, through Assistant State's Attorney David B. Franks, moved to supplement its previous answer with a copy of the crime lab report and the curriculum vitae of the forensic chemist and the names and addresses of three additional witnesses the State intended to call as witnesses.  On April 30, the court allowed the State's motion 
instanter
 and, apparently in response to defense counsel's motion (based in part on the need to review the additional evidence), the court continued the trial to June 22, 1998, over the State's objection.

On June 10, 1998, the State filed another motion to supplement its answer to discovery, stating that there were additional law enforcement agencies involved in the investigation including the Lake County Metropolitan Enforcement Group (MEG) and the Drug Enforcement Agency (DEA); that there was more than one police report and more than one lab report generated; and the State had sought, “through diligence,” to obtain all relevant police reports, evidence receipts, lab reports, and the names of those involved in the chain of custody. These additional documents were not specifically identified in the motion nor are they attached to the motion in the record on appeal.  The motion appears to have been  faxed from Franks' office to defense counsel on or about June 10.  On June 12, the court continued the matter to June 15, 1998, for a hearing. 

At the June 15 hearing, counsel for each of the codefendants  was present to respond to the State's motion.  Franks described his attempts to obtain reports from the agencies involved and argued that he was diligent in doing so.  Defense counsel, Francisco Botto, acknowledged that he received the supplemental discovery materials but denied that he did not object to the late discovery.  Franks began to fax documents to him, including confessions and DEA reports amounting to about 100 pages that Botto did not have before.  Botto received faxes on June 5, 10, and 11.  He could not read some of them because they were not legible.  Botto noted that the trial had been scheduled for May 4 when he asked for a continuance over the State's objection.  He opined that the State was apparently “ready then at that time to try the case with all of this evidence in their hands.”   Botto noted that the dates on the faxed documents indicated that the Task Force had the documents in April, yet he now had 100 pages of new evidence to go through the week before trial and he was objecting to the State's motion.  The record indicates that defendant had been held in jail on a very high bond for 116 days at the time of the hearing. 

Mr. D.J. Tegler, counsel for codefendant Garcia, argued that he was in a somewhat different position because Garcia's trial was set for July 20.  However, Tegler had not received certain reports that he had subpoenaed.  He did receive police reports pertaining to another codefendant (presumably Rodriguez).  He also received the same documents Botto received in the past week.  For the first time, he had now received the report of a confession in Spanish but had not yet received a transcription, and he was considering whether to move for suppression.  He argued that MEG was an agent of the State and had been “sitting” on the reports since the day his client was arrested.  Tegler strongly objected to the confession coming into evidence three months later.  

William Gracik, counsel for codefendant Rodriguez, also argued against the State's motion, based in part on what transpired at a May 20, 1998, hearing.  (There is no report of proceedings for that date in this record.)   According to Gracik, the State indicated it had completed discovery on May 20, and the supplemental discovery material now showed a possible conflict of interest between his client and a codefendant.  He noted that his client was sitting in jail and any motion in response to this late discovery would be charged against his client. 

In ruling on the State's motion, the trial court observed: 

“We are talking about people who are in jail awaiting trial. We have drug cases.  We are talking about discovery. 

Mr. Tegler makes a very significant point from my perspective, and that is that these people that have this discovery are not the agents of the defendants, and they're not going to run my court. 

Now, they're going to give this information up.  If you've got somebody's confession, and now within two weeks prior to trial, *** the confession was taken at the time of the arrest or contemporaneous with when they arrested him, what is going on?  

I personally have a very hard time dealing with discovery motions, and the reason I say that is that it should be a free flow of information immediately.  There is no need to muck up the works.  Get it out.  Get it to these people.  I am not saying, Mr. Franks that you didn't act diligently in attempting to get it, but I'm not going to have these agencies running my court, and you can tell them that, and the three Defense motions are granted.” 

In a criminal case, the provisions of Supreme Court Rule 412 require the State, upon a defendant's request, to disclose material and information within its possession or control, subject to certain qualifications, including, among other things: 
the names of the witnesses it intends to call at trial; any written or recorded statements and the substance of any oral statements made by the accused or by a codefendant and a list of witnesses to the making and acknowledgment of statements; any reports or statements of experts made in connection with the particular case, including the results of physical or mental examinations and of scientific tests and experiments or comparisons and a statement of the qualifications of the expert; any books, papers, documents, photographs, or tangible objects that the prosecution intends to use at trial or that were obtained from or belong to the accused; and material or information within its possession or control that tends to negate the guilt of the accused as to the offense charged or would tend to reduce his punishment therefor.  134 Ill. 2d Rs. 412 (a), (c). 

Rule 412 further provides:

“(f) The State should ensure that a flow of information is maintained between the various investigative personnel and its office sufficient to place within its possession or control all material and information relevant to the accused and the offense charged. 

(g) Upon defense counsel's request and designation of material or information which would be discoverable if in the possession or control of the State, and which is in the possession or control of other governmental personnel, the State shall use diligent good faith efforts to cause such material to be made available to defense counsel[.]” 134 Ill. 2d Rs. 412(f), (g). 

The State has a duty to use due diligence to ensure that it becomes aware of discoverable matters and must see that there is a proper flow of information between all the branches and personnel of its law enforcement agencies and legal officers.  
People v. Winfield
, 113 Ill. App. 3d 818, 836-37 (1983).  If the State's efforts are unsuccessful and the personnel or material are subject to the jurisdiction of the court, the court will issue  subpoenas.  See 134 Ill. 2d R. 412(g).  The purpose of the discovery rule is to afford the accused protection against surprise, unfairness, and inadequate preparation and to afford the defendant an opportunity to investigate the circumstances from which the evidence arose.  
People v. Robinson
, 157 Ill. 2d 68, 79 (1993); see 
People v. Miles
, 82 Ill. App. 3d 922, 926 (1980).  Compliance with the discovery provisions is mandatory and will be excused only where the prosecutor was unaware of the existence of the statement or discoverable evidence and could not have become aware of it in the exercise of due diligence.  See 
Miles
, 82 Ill. App. 3d at 926.   

Supreme Court Rule 415(g) authorizes the trial court to impose sanctions for the inadvertent failure to follow discovery orders: 

“If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances.”  134 Ill. 2d R. 415(g)(i). 

See 
People v. Rubino
, No. 2--98--0773, slip op. at 3 (May 19, 1999).

A discovery rule violation by the State may occur whether or not the State's neglect was inadvertent or purposeful.  
People v. Weaver
, 92 Ill. 2d 545, 558 (1982); 
People v. Koutsakis
, 255 Ill. App. 3d 306, 312 (1993) (court properly imposed sanction of exclusion even where State's discovery violation was inadvertent and there was no showing of bad faith); 
People v. Heinzmann
, 232 Ill. App. 3d 557, 560 (1992) (dismissal sanction appropriate even though State's violation was inadvertent).  If an attorney's violation is willful, the court may subject the attorney himself to sanctions.  
Weaver
, 92 Ill. 2d at 558-59.  

The correct sanction to be applied is left to the trial court's discretion, and its judgment is given great weight.  
People v. Morgan
, 112 Ill. 2d 111, 135 (1986).  The trial court is in the best position to determine an appropriate sanction based upon the effect the discovery violation will have upon the defendant.  
Koutsakis
, 255 Ill. App. at 314.  An abuse of discretion exists only in cases where the trial court's decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court.  
People v. Beck
, 295 Ill. App. 3d 1050, 1061 (1998).  A reviewing court will find an abuse of discretion when a defendant is prejudiced by the discovery violation and the trial court fails to eliminate the prejudice.  
Weaver
, 92 Ill. 2d at 559.

 The preferred sanction for a discovery violation is a recess or a continuance if the granting thereof would be effective to protect the defendant from surprise or prejudice.  
People v. Hawkins
, 235 Ill. App. 3d 39, 41 (1992).  However, harsher sanctions, such as the exclusion of evidence, dismissal, or the granting of a new trial, may be warranted where the defendant is denied a full opportunity to prepare his defense and make tactical decisions with the aid of the information withheld (
People v. Aguilar
, 218 Ill. App. 3d 1, 9-10 (1991) (State's nondisclosure of payments to informant required new trial despite good faith)).  See 
Koutsakis
, 255 Ill. App. 3d 306 (exclusion of State's evidence for inadvertent discovery violation where requested matter was material to case even though not necessarily exculpatory). 

The thrust of the State's arguments is that the sanction imposed in this case is harsh and punitive.  The State asserts that it did not willfully withhold the evidence and the ruling impaired its ability to prosecute this matter.  While acknowledging that a principal reason for the discovery rule is to avoid surprise, the State urges that a recess or a continuance should have been allowed and would have been a preferable and effective sanction in this case.  The State cites, for example, 
People v. Harris
, 259 Ill. App. 3d 106 (1994), and 
Hawkins
, 235 Ill. App. 3d 39.  

Notwithstanding the State's arguments that the sanction was too harsh, we believe the trial court's decision must be sustained  for a number of reasons.  First, the State has failed to provide a complete record, particularly with respect to the specific evidence and documents that were to supplement its discovery.  The State as the appellant has the burden of providing a complete record on appeal, and any doubts which arise from the incompleteness of the record must be resolved against it.  
People v. Hubbard
, 170 Ill. App. 3d 572, 577 (1988).  It is incumbent upon the appellant to present a record showing the errors complained of, and, in the absence of a sufficient record, this court will presume that the omitted evidence supports the trial court's decision and the trial court correctly applied the law to the facts.  
People v. McDuffee
, 299 Ill. App. 3d 283, 286 (1998); 
City of Elgin v. Hawthorne
, 204 Ill. App. 3d 807, 812 (1990).    

The State alludes to its supplementary discovery matters as including the names of additional witnesses, DEA reports, MEG reports, inventory sheets, and laboratory results.  The State or its agents also apparently had the confession of one or more of the codefendants, reportedly transcribed in Spanish, and a tape of an “overhear.”  The trial concerns conspiracy charges involving three defendants each of whom seems to have received somewhat different discovery materials and who have potentially conflicting defenses.   We are still not apprised of the specific contents of this supplementary discovery evidence, much of which was in agency hands as early as March shortly after the arrest and some of which was available in April but not promptly tendered.  Yet the State asks us to weigh the relative unfairness of the sanction against the surprise and prejudice to the defendant stemming from the delay and neglect of the State and its law enforcement agencies--even if inadvertent--in producing readily available discoverable materials just before the trial of defendant. 

The State has a duty to use due diligence to ensure that it becomes aware of discoverable matter and to see that there is a proper flow of information between it and all its law enforcement agencies and personnel.  Where its efforts are unsuccessful, the State can avail itself of the court's subpoena power.  Compliance with discovery is mandatory.  The available record tends to show that the prosecutor was aware of the discoverable materials or could have become aware of them in the exercise of due diligence, yet the agencies' materials were not promptly tendered to defense counsel.

Contrary to the State's assertion, the court in this instance did 
not
 excuse the lateness of the agencies' serial disclosures merely because it noted Franks' attempts to obtain and produce the discovery materials.  Although the State characterizes the sanction as a punishment, we view it as a tool, judiciously and proportionately applied in the present case, to obtain the cooperation of the State and its law enforcement agencies and personnel.  The court allowed in discovery materials tendered through June 3, 1998, well after the prior cutoff date.  Defendant was previously given some discovery materials that the State may yet rely on at trial.  

Although the State claims that its prosecution is impaired, it has yet to show specifically how it will be prejudiced.  The reasons for the delay in complying with discovery remain largely unexplained even now.  The trial court had previously granted a supplementary discovery motion, continued the defendant's trial as a result, and then cut off discovery at an appropriate time just before trial so as to avoid prejudicing the defendant in preparing for trial.  The defendant's right to a speedy trial, to have compulsory process to obtain witnesses, and his fundamental, due process right to a fair trial are implicated under our state and federal constitutions.  U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 2, 8.   The defendant had made a speedy trial demand and had been incarcerated some 116 days.  In light of the 11th-hour revelations, defense counsel would now have had to investigate new evidence, consider new tactics and possible motions, and delay the trial while the defendant sat in jail.  Other trials would likely be delayed as well.  Any continuance could have been charged to defendant.  

We cannot say that the court improperly refused to delay the trial further.  Indeed, we are unaware that the State actively sought a continuance or an alternative to the sanction.  A trial court has the inherent authority to control its docket and to prevent undue delays in the disposition of cases caused by a party's abuse of the procedural rules.  
Sander v. Dow Chemical Co.
, 166 Ill. 2d 48, 66 (1995).  In a criminal case, the trial court has the inherent power to impose sanctions, including the dismissal of the case, to ensure that a defendant obtains a fair trial and to compel compliance with its discovery orders.  
People v. Pearson
, 210 Ill. App. 3d 1079, 1085 (1991).  Each case must be decided on its own facts, and, without more, the failure to order a continuance does not amount to reversible error.  See 
Weaver
, 92 Ill. 2d at 560.  

There would be little purpose in having the sanction of exclusion available but not allowing the courts to employ it in appropriate cases.  Here, the trial court was asserting its authority not to punish the State but to ensure that defendant was not prejudiced in his preparation for trial by the State agencies' pattern of delay in producing discoverable matters and to ensure a fair and speedy trial.  The sanction was proportionate to the violation.  We cannot say that the trial court abused its discretion imposing it.

The order of the circuit court of McHenry County is affirmed. 

Affirmed. 

INGLIS, J., concurs. 

JUSTICE RAPP, dissenting:

I respectfully dissent from the opinion.  This case parallels 
People v. Rubino
, No. 2--98--0773 (May 19, 1999), cited by the majority.  In that case we condemned the discovery violation by the State but found that the exclusion of evidence was too harsh a sanction.

I recognize that in this case the defendant had been held in jail at a high bond for 116 days.  This factor was not present in 
Rubino
.  Yet the trial court had less harsh tools available to sanction the State short of the punishment of exclusion of evidence.

In this case, 
when the State filed its certificate of impairment and notice of appeal pursuant to Supreme Court Rule 604(a)(1) (145 Ill. 2d R. 604(a)(1)), the trial court released the defendant from custody pursuant to Supreme Court Rule 604(a)(3) (145 Ill. 2d R. 604(a)(3)).  This same procedure was available to the trial court under section 110--6 of the Code of Criminal Procedure of 1963 (725 ILCS 5/110--6 (West 1998)), in that defendant could have been released on a low bond or a personal recognizance during delays caused by the State's failure to complete discovery.

In 
Rubino
, we urged the trial court to consider the use of Supreme Court Rule 412(g) which specifically states, in relevant part:

"[i]f the State's efforts are unsuccessful and such material or other governmental personnel are subject to the jurisdiction of the court, the court shall issue suitable subpoenas or orders to cause such material to be made available to defense counsel."  134 Ill. 2d R. 412(g).

Cases illustrating the use of a subpoena for discovery focus on subpoenas issued prior to the time of filing the indictment or information, or in cases which are not felonies.  See 134 Ill. 2d R. 411; 
People v. Shukovsky
, 128 Ill. 2d 210 (1988); 
People ex rel. Fisher v. Carey
, 77 Ill. 2d 259 (1979); 
People v. Mitchell
, 297 Ill. App. 3d 206 (1998).  Although these cases are not specifically applying Supreme Court Rule 412, they focus on the authority of the trial court to issue subpoenas 
duces tecum
 to law enforcement agencies who must respond under the penalty of contempt.

The trial court and the majority herein characterize the remedy of exclusion to be a necessary tool for the court to control its docket.  I recognize the frustration present in this case and several other similar cases in the same trial court with the same drug enforcement agencies.  But is docket control the only goal of the criminal process?  I respectfully suggest that the pursuit of justice both for the State and the defendant would best be served by continuing the cause, releasing the defendant on bond, and issuing subpoenas to the law enforcement agency pursuant to Rule 412(g) when it appears that the State has been duly diligent in seeking the information but frustrated by the agency's lack of complete and timely response.  Only after the trial court has exhausted other less harsh remedies would I find exclusion of evidence to be appropriate.