NO. 4-99-0267

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

WILLIE JOHNSON,

Defendant-Appellant.

)

)

)

)

))))

Appeal from

Circuit Court of

Champaign County

No. 98CF864

Honorable

John R. DeLaMar,

Judge Presiding.

__________________________________________________________________

JUSTICE MYERSCOUGH delivered the opinion of the court:

In June 1998, the State charged defendant, Willie Johnson, with one count each of 
home invasion (720 ILCS 5/12-11 (West 1996)) and armed robbery (720 ILCS 5/18-2(a) (West 1996)) and two counts of attempt (aggravated criminal sexual assault) (720 ILCS 5/8-4(a) (West 1996); 720 ILCS 5/12-14(a)(1), (a)(2) (West Supp. 1997)).  In January 1999, a jury found defendant guilty of armed robbery and attempt (aggravated criminal sexual assault) but found him not guilty of home invasion.  In March 1999, the trial court sentenced defendant to an extended 60-year prison term for armed robbery and a consecutive 15-year prison term for attempt (aggravated criminal sexual assault).  The trial court found that in regard to the conviction for armed robbery, defendant had inflicted great bodily harm on the victim and, accordingly, defendant would be required under Public Act 90-592 (Pub. Act 90-592, §5, eff. June 19, 1998 (1998 Ill. Laws 1284, 1284-94)) to serve 85% of his sentence because of the "truth-in-sentencing" aspect of that legislation.  Defendant immediately filed a postsentencing motion asking the trial court to reduce his sentence.  The trial court denied defendant's motion.

On appeal, defendant argues that the trial court erred in (1) denying his motion for discharge for violating his speedy-trial rights, (2) failing to give a jury instruction for the included offense of robbery, (3) allowing the State to use the mere-fact method of impeaching him with prior 
felony convictions, (4) permitting the State to present two chain-of-custody witnesses who had never been disclosed to defendant in discovery, (5) failing to grant a directed verdict when the State failed to present sufficient evidence to convict him beyond a reasonable doubt of the offenses charged, (6) abusing its discretion by imposing consecutive sentences upon him, and (7) finding that truth in sentencing should apply to his conviction for armed robbery.  We affirm.

I. BACKGROUND

In June 1998, the State charged defendant as stated.  In August 1998, the State moved for a continuance pursuant to section 103-5(c) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/103-5(c) (West 1996)), arguing that it could not obtain and test certain deoxyribonucleic acid (DNA) evidence within the initial 120 days provided in section 103-5(a) of the Code (725 ILCS 5/103-5(a) (West 1996)).  Pursuant to section 103-5(c), the State requested an additional 120 days beyond the initial 120 days within which the State must prosecute defendant, for a total maximum of 240 days from the day that defendant was taken into custody.  The trial court granted the State's motion over defendant's objection.

In January 1999, defendant filed a motion to discharge, arguing that the State failed to bring him to trial in a timely manner in violation of his speedy-trial rights.  The trial court denied defendant's motion.

Later that month, the trial court conducted a jury trial.  At trial, the 55-year-old victim, J.S., testified about how defendant brutalized her.  J.S. testified that on June 20, 1998, she hosted a garage sale at her home from 7 a.m. until 4 p.m.  J.S. testified that defendant had come three times to her garage sale that day.  J.S. had given defendant's girlfriend clothes and cooking pans.  Defendant purchased a telephone cord from J.S. and witnessed J.S. exchanging cash with other patrons.

That evening a friend came to check on J.S. and bring her supper.  The friend did not lock the door as she left.  J.S. fell asleep watching television in her bedroom sometime during the 10 p.m. news.

J.S. testified that, in the early morning hours, she awoke when defendant grabbed her hair and dragged her out of bed and into the living room face down, repeatedly striking her head with a metal BB handgun and screaming at her to give him the money.  After defendant brutalized J.S. with repeated blows to her head and threatened to kill her, defendant dragged her by the hair onto the porch to show codefendant Abrian Robinson defendant's "work."  Defendant then dragged J.S. back into the living room and again demanded money.  J.S. refused, and defendant pulled her head up while Robinson pulled his penis out of his pants.  Defendant told J.S. to "suck [Robinson's] dick."  J.S. refused, and defendant struck her across the face with the BB handgun.  Defendant told Robinson to grab J.S.' arm and help him put her on the bed.  J.S. then told defendant that the money was in her bedroom in a drawer.  Defendant then dragged J.S. into the bedroom, and J.S. got the proceeds of her garage sale from her drawer.  Defendant dragged J.S. back into the living room, pointed the pistol at her, and clicked it.  At that time, defendant realized that Robinson had left.  Defendant turned and ran away.  J.S. then called the police, and the police took her to the hospital.

J.S. suffered numerous lacerations to her head that required stitches.  In addition to the lacerations, J.S. had bruises on her back, shoulder, and knees.  As a result of these injuries, J.S. spent three days in the hospital.

Robinson also testified for the State and corroborated much of J.S.' account.  The State produced various objects found in defendant's and Robinson's apartments that had been taken from J.S.' residence, including medication, an asthma inhaler, and a Link card.

The State produced chain-of-custody witnesses who had possessed, transported, stored, or tested various pieces of evidence.  The State produced two chain-of-custody witnesses who had not been disclosed to defendant in discovery, in violation of Supreme Court Rule 412 (134 Ill. 2d R. 412).  The trial court permitted the State to call the witnesses over defendant's objection but allowed defendant's attorney to interview both witnesses prior to their testifying.  The State also produced a black metal BB handgun found in defendant's apartment, and experts testified that the handgun had bloodstains containing DNA consistent with J.S.' DNA profile.

The jury found defendant not guilty of home invasion but found him guilty of armed robbery and attempted aggravated criminal sexual assault.  That same day, defendant filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial.  Two days later, defendant filed an amended motion for judgment notwithstanding the verdict or, in the alternative, a new trial.  

In March 1999, the trial court denied defendant's motion and sentenced him as stated.  Defendant immediately filed a postsentencing motion asking the trial court to reduce his sentence.  The trial court denied defendant's motion.  This appeal followed.

II. ANALYSIS

A. Speedy-Trial Rights

Initially, defendant argues that the trial court erred by denying his motion for discharge for violating his speedy-trial rights.  We disagree.

"A defendant charged with an offense has both a constitutional and a statutory right to a speedy trial."  
People v. Huff
, 195 Ill. 2d 87, 91, 744 N.E.2d 841, 843 (200l), citing U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §8; 725 ILCS 5/103-5 (West 1996).  Section 103-5 embodies a defendant's speedy-trial rights as guaranteed by section 8 of article I of the Illinois Constitution.  
See 
People v. Reimolds
, 92 Ill. 2d 101, 106, 440 N.E.2d 872, 874 (1982).  The Illinois speedy-trial statute provides an enforcement mechanism for violations of this constitutional right.  
People v. Woolsey
, 139 Ill. 2d 157, 165, 564 N.E.2d 764, 767 (1990); 
People v. Healy
, 293 Ill. App. 3d. 684, 689, 688 N.E.2d 786, 789 (1997).  Section 103-5 of the Code provides, in pertinent part:

"(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant ***.

 * * *

(c) *** If the court determines that the State has exercised without success due diligence to obtain results of DNA testing that is material to the case and that there are reasonable grounds to believe that such results may be obtained at a later day, the court may continue the cause on application of the State for not more than an additional 120 days.

(d) Every person not tried in accordance with subsections (a) *** and (c) of this [s]ection shall be discharged from custody or  released from the obligations of his bail or recognizance."  725 ILCS 5/103-5(a), (c), (d) (West 1996).

Accordingly, the State must bring defendant to trial within the statutory period of 120 days under the speedy-trial statute (
Reimolds
, 92 Ill. 2d at 106, 440 N.E.2d at 875), and, if defendant is in custody, 
no demand is required to begin the running of the 120-day period
 (
People v. Garrett
, 136 Ill. 2d 318, 324, 555 N.E.2d 353, 356 (1990)).  However, under section 103-5(c), the State can ask the trial court to grant an additional 120-day period to enable it to procure DNA testing results that it could not obtain with due diligence in the initial 120 days.  725 ILCS 5/103-5(c) (West 1996).

In the present case, defendant was taken into custody June 22, 1998, and was unable to post bond.  On July 30, 1998, the State filed a motion to continue to enable it to receive DNA analysis of bloodstains on certain crucial pieces of evidence, including the BB handgun.  In its motion, the State requested that the trial court grant an additional 120 days beyond the original 120-day period allotted under section 103-5(a) to obtain the DNA results.

On appeal, defendant argues that section 103-5(c) permits a trial court to grant an additional 120-day period only from the day it granted the State's motion.  Specifically, with regard to the present case, defendant argues that the trial court could grant an additional 120 days only from July 30, 1998, when the trial court granted the State's motion to continue.  According to defendant, under section 103-5(c), the trial court could not grant the State up to a total of 240 days to bring defendant to trial.  We disagree.

 Section 103-5(c) gives the trial court authority to continue a defendant's case beyond the initial 120-day period provided in section 103-5(a), if the court determines that (1) the State has exercised due diligence to obtain DNA test results, (2) DNA analysis is material to the case, and (3) reasonable grounds exist to believe that the test results may be obtained at a later day.  
Section 103-5(c) permits the trial court to continue defendant's case "for not more than an additional 120 days."  725 ILCS 5/103-5(c) (West 1996).  
Despite defendant's arguments to the contrary, section 103-5(c) allows the trial court to continue cases involving DNA testing for a maximum of 120 days beyond the initial 120-day period provided in section 103-5(a), for a total maximum period of 240 days, without violating a defendant's speedy-trial rights.
  We note, however, that section 103-5(c) makes it incumbent upon the State to apply for such a continuance, and the length of any extension up to the maximum necessarily depends upon the State's request.

In the present case, the State requested an additional 120 days beyond the basic 120 days provided for in section 103-5(a).  The trial court granted the State's motion.  Because the State brought defendant to trial within the permissible statutory time, the trial court did not err by denying defendant's motion to discharge him.

B. Jury Instructions

[The material in the remaining sections is non­­publishable under Supreme Court Rule 23.  166 Ill. 2d R. 23]

Defendant next argues that the trial court erred by refusing to give a jury instruction that would allow the jury an opportunity to find defendant guilty of the included offense of robbery instead of the charged offense of armed robbery.  We disagree.

In 
People v. Novak
, 163 Ill. 2d 93, 105, 643 N.E.2d 762, 769 (1994), our supreme court discussed a trial court's giving jury instructions on included offenses:

"A review of the pertinent legal principles is necessary to better understand the parties' arguments on appeal.  No person can be convicted of an offense that he or she has not been charged with committing.  However, a defendant may be convicted of an offense not expressly included in the charging instrument if that offense is a lesser included offense of the crime expressly charged.  [Citations.]

A lesser included offense is a valuable tool for a defendant, a prosecutor, and society generally.  For a defendant, an instruction on a lesser included offense provides an important third option to the jury.  If the jury believes that defendant was guilty of something, but uncertain whether the charged offense had been proved, it might convict defendant of the lesser offense, rather than convict or acquit him of the greater offense. [Citation.]

For a prosecutor, a defendant may not automatically go free if the evidence fails to prove an essential element of the greater offense.  For society, the punishment that it imposes on a criminal may conform more accurately to the crime actually committed."

No question exists that robbery is an included offense to armed robbery.  The only question that remains is whether defendant had a right to have the trial court instruct the jury on that included offense.

"The identification of a lesser included offense does not automatically give rise to a correlative right to have the jury instructed on the lesser offense.  [Citation.]  Rather, an 'independent prerequisite' must be met for the giving of a lesser included offense instruction ***.  This independent prerequisite involves an examination of the evidence presented at trial.

A defendant is entitled to a lesser included offense instruction only if the evidence would permit a jury rationally to find the defendant guilty of the lesser included offense and acquit him or her of the greater offense."  
Novak
, 163 Ill. 2d at 108, 643 N.E.2d at 770.

Moreover, in 
Novak
, the supreme court concluded that an included offense is not available to a defendant if the charging instrument does not describe the foundation or main outline of that included offense.  
Novak
, 163 Ill. 2d at 114, 643 N.E.2d at 773.  In 
Novak
, the State had charged the defendant with aggravated criminal sexual assault for committing an act of sexual penetration between defendant's penis and the victim's mouth.  
Novak
, 163 Ill. 2d at 114, 643 N.E.2d at 773.  The defendant wanted an instruction on the included offense of aggravated criminal sexual abuse.  The supreme court stated that the indictment against the defendant did not outline or create the foundation for the conviction of the lesser offense because it failed to describe the conduct prescribed for the lesser offense.  
Novak
, 163 Ill. 2d at 114-15, 643 N.E.2d at 773.

In the present case, under all factual scenarios presented to the jury, J.S. was robbed while defendant or Robinson threatened and struck J.S. with a metal BB handgun.  Given the use of the BB handgun as a bludgeon, the jury could not conclude that the BB handgun was not a dangerous weapon as required for the offense of armed robbery.  720 ILCS 5/18-2(a) (West 1996); 
People v. De La Fuente
, 92 Ill. App. 3d 525, 536, 414 N.E.2d 1355, 1364 (1981) (finding that a pellet gun used as a bludgeon was 
per
 
se
 dangerous).  Additionally, the indictments against defendant specifically linked the use of a dangerous weapon with the robbery.  Therefore, given the trial testimony and the indictment, the jury could conclude only that if defendant committed the offense of robbery against J.S., then that offense was committed under the threat and with the use of a dangerous weapon.  Therefore, the jury instruction on robbery was not warranted, and the trial court did not err by refusing to give such an instruction.

C. Use of Mere-Fact Impeachment

Defendant next argues that the trial court erred in allowing the State to impeach him using the mere-fact method of impeachment.  We agree but find such error harmless.

Under the mere-fact method, "only the 'mere fact' of the felony conviction is to be brought to the jury's attention, as opposed to informing the jury of the precise offense of which the defendant has been convicted or the circumstances surrounding that prior conviction or both."  
People v. Kunze
, 193 Ill. App. 3d 708, 733, 550 N.E.2d 284, 301 (1990) (Steigmann, J., specially concurring).  In 
People v. Atkinson
, 186 Ill. 2d 450, 455, 713 N.E.2d 532, 535 (1999), the Supreme Court of Illinois clearly stated that "[t]he issue before [that] court [was] whether the mere-fact method of impeachment should be adopted in Illinois."  The supreme court "decline[d] to adopt the mere-fact method of impeachment" (
Atkinson
, 186 Ill. 2d at 458, 713 N.E.2d at 536) and specifically "reject[ed] the mere-fact approach" (
Atkinson
, 186 Ill. 2d at 464, 713 N.E.2d at 538).  The supreme court directed that "trial courts should not consider the mere-fact method of impeachment."  
Atkinson
, 186 Ill. 2d at 461, 713 N.E.2d at 537.  Therefore, a trial court commits error by choosing to utilize the mere-fact approach.  
Atkinson
, 186 Ill. 2d at 457-58, 713 N.E.2d at 536.

Most recently, in 
People v. Cox
, 195 Ill. 2d 378, ___ N.E.2d ___ (2001), the supreme court clarified its position on the use of mere-fact impeachment.  The supreme court stated:

"The State attempts to limit our holding in 
Atkinson
. *** In 
Atkinson
, however, we held that 'trial courts 
should
 
not
 consider the mere-fact method of impeachment.'  (Emphasis added.)  
Atkinson
, 186 Ill. 2d at 461.  We find no suggestion in this unequivocal language that a trial court's discretion encompasses mere-fact impeachment.  Additionally, the State contends 
Atkinson
 only governs cases in which a trial court declined to consider a defendant's request for mere-fact impeachment.  Again, we see no such limitation.

Admitting the mere fact of the defendant's prior felony convictions was error."   
Cox
, 195 Ill. 2d at 386-87, ___ N.E.2d at ___.

Moreover, 
Atkinson
 applies retroactively to 
all cases pending at the time the supreme court issued its 1999 opinion.  
Cox
, 195 Ill. 2d at 386, ___ N.E.2d at ___; see also 
People v. Dixon
, 308 Ill. App. 3d 1008, 1020, 721 N.E.2d 1172, 1181 (1999) (Myerscough, J., dissenting).  Therefore, 
Atkinson
 applies to the case at bar.

In the present case, defendant presented a motion 
in
 
limine
 regarding the use of prior convictions to impeach defendant.  In a hearing outside the presence of the jury, the following discussion occurred:

"MR. KENNEDY [(the prosecutor)]:  All of these [prior felony convictions], according to *** standards in 
People v. Montgomery
, is appropriate to consider solely on the issue of credibility.  There would be a limiting instruction of course. *** If, perhaps, the [c]ourt feels that prejudicial impact would be lessened by the use of the so-called 'mere[-]fact approach,' the People would certainly live with that ruling, as I believe it's the state of the law if the [d]efendant so elects.  But all of the convictions referenced are within [10] years, are within the 
Montgomery
 standard and should be available as rebuttal evidence if the [d]efendant elects to put his credibility at issue.

THE COURT:  Anything further on your motion [
in
 
limine
], Mr. Lerner?

MR. LERNER [(defense counsel)]:  Yes, your Honor.  If my motion is denied and the [S]tate's allowed to do this, we would ask that it be done by not naming the felony, saying that there are--there has been a felony conviction and that's it.

THE COURT:  First of all, I believe that the prior convictions are probative on the issue of believability.  Now, I must balance the probative nature of them against the possible prejudice.  There is a very real possibility of prejudice here if the jury's instructed as to the specific charge of which [defendant] was convicted on the prior occasions.  While they're not identical to any of the charges in this case, there is sufficient similarity between residential burglary and home invasion to bring this to, I think, the brink of prejudicial value out-weighing probative value.

I believe that can be obviated [
sic
] by simply allowing the State to impeach [defendant], should he choose to testify, with the fact that on various dates he was convicted of felony offenses and they may consider that in weighing the believability of his testimony.  So the motion 
in
 
limine
 is denied with that understanding.

* * *

Each of these offenses falls well[]within the relevant time period.  It's well[]within the [10] years established by 
Montgomery
, at least a 
prima
 
facia
 [cutoff] point.  And for the reasons I have indicated, balancing the probative nature against the possibility for prejudice, I believe they are more probative than prejudicial, provided the jury is not told the specific felony for which [defendant] is convicted. ***

MR. LERNER:  Can I put one thing on the record?

THE COURT:  All right.

MR. LERNER:  I want the record to make sure that my objection was clear.  That prejudice, what we're trying to avoid, is having a jury say, 'look, this guy's a criminal, he's a criminal in the past, so he's a criminal now.'  And that's what we don't want.

We say it's okay to use towards his credibility but not--we don't want that to happen.  So to say he's been convicted of a felony in the past, I believe would be allowed to say he's been convicted of four or five separate felonies, can serve no purpose but to prejudice the person and does not go towards his credibility."

Under 
Atkinson
 as clarified by 
Cox
, the trial court committed error by ordering the State to impeach defendant, if at all, using the mere-fact approach.  "In order to determine whether this evidentiary error was 'a material factor in his conviction such that without the evidence the verdict likely would have been different' ([
People v. Williams
, 161 Ill. 2d 1, 42, 641 N.E.2d 296, 313 (1994)]), we turn to the evidence presented at trial."  
Cox
, 195 Ill. 2d at 387, ___ N.E.2d at ___. 

In light of (1) J.S.' detailed testimony of defendant's brutality against her, (2) the corroborating testimony of codefendant Robinson in which he admitted his involvement, and (3) the metal BB handgun having J.S.' bloodstains that police found hidden in a bag under a chair in defendant's apartment, the evidence against defendant was overwhelming.  The trial court's decision to allow the State to use mere-fact impeachment would not have materially affected the jury's decision.  
Therefore, the use of mere-fact impeachment was harmless error beyond a reasonable doubt.

D. State's Violation of Rule 412

Defendant also argues that the trial court erred in allowing the State to present chain-of-custody witnesses regarding DNA testing, which witnesses the State had not previously disclosed pursuant to Supreme Court Rule 412 (134 Ill. 2d R. 412).  We disagree.

The State has a duty to disclose (1) the name and address of witnesses, together with any written or recorded statements, reports, or memoranda of such witnesses; (2) any written or recorded statements of the accused; (3) relevant grand jury testimony of persons testifying on behalf of the State; (4) transcripts of the grand jury minutes of the accused's testimony; and (5) any reports of statements of experts, including scientific tests, experiments, or comparisons, and a statement of the expert's qualifications.  134 Ill. 2d R. 412(a).  Such disclosure is required so that defense counsel has an opportunity to investigate the circumstances surrounding the statement to protect the defendant from surprise and inadequate preparation.  
People v. Winfield
, 113 Ill. App. 3d 818, 836, 447 N.E.2d 1029, 1044 (1983).  Compliance with Rule 412(a) is mandatory.  
Winfield
, 113 Ill. App. 3d at 836, 447 N.E.2d at 1044.

Further, the State has a duty to use due diligence to ensure that it becomes aware of evidence.  
Winfield
, 113 Ill. App. 3d at 836, 447 N.E.2d at 1044.  The State must see to the proper flow of information between all branches and personnel of its law enforcement agencies and legal officers.  
Winfield
, 113 Ill. App. 3d at 837, 447 N.E.2d at 1044.  The State's failure to comply with this mandate constitutes a discovery violation whether the State's neglect was inadvertent or purposeful.  
People v. Manzo
, 183 Ill. App. 3d 552, 557, 539 N.E.2d 237, 240 (1989).

In the present case, the trial court found that the State failed to properly disclose the names of certain chain-of-custody witnesses until the day of trial.  Therefore, no question exists as to whether the State committed a discovery violation.

Under Supreme Court Rule 415(g) (134 Ill. 2d R. 415(g)), once the trial court determines that a discovery violation has occurred, it may impose any sanction that it deems just under the circumstances.  Supreme Court Rule 415(g) provides:

"(i) If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances.

(ii) Wilful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court."  134 Ill. 2d R. 415(g).

Therefore, the trial court may select a sanction from a number of options, including ordering compliance, excluding the evidence in question, declaring a mistrial if appropriate, or taking other such action appropriate for that situation.  
Winfield
, 113 Ill. App. 3d at 837, 447 N.E.2d at 1044.  The preferred sanction for a discovery violation is a recess or a continuance if the granting thereof would be effective to protect the defendant from surprise or prejudice.  
"However, harsher sanctions, such as the exclusion of evidence, dismissal, or the granting of a new trial, may be warranted where the defendant is denied a full opportunity to prepare his defense and make tactical decisions with the aid of the information withheld."  
People v. Leon
, 306 Ill. App. 3d 707, 713-14, 713 N.E.2d 1258, 1263 (1999).

In fashioning its sanction, the trial court must consider 
whether the violation caused surprise or prejudice to the defendant.  
People v. Robinson
, 157 Ill. 2d 68, 78, 623 N.E.2d 352, 357 (1993).  The trial court is in the best position to determine an appropriate sanction based upon the effect that

the discovery violation will have upon the defendant.  
Leon
, 306 Ill. App. 3d at 713, 713 N.E.2d at 1263.  Ultimately, the sanction to be applied is left to the trial court's discretion, and in general, the judgment of the trial court is given great deference.  
People v. Morgan
, 112 Ill. 2d 111, 135, 492 N.E.2d 1303, 1312 (1986).  In fact, the trial court's discretion is broad and will not be disturbed unless abused.  
People ex rel. Hartigan v. Organization Services Corp.
, 147 Ill. App. 3d 826, 832-33, 498 N.E.2d 597, 601 (1986).  "An abuse of discretion exists only in cases where the trial court's decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court."  
Leon
, 306 Ill. App. 3d at 713, 713 N.E.2d at 1263.

In the present case, defendant objected to the State's calling two undisclosed witnesses.  The trial court stated:

"Clearly [the witnesses] should have been disclosed, and it's a violation of the State's obligation under Supreme Court Rule 412 and the order of the court entered earlier for discovery; however, simply because it's a violation does not mean that the only appropriate remedy is to bar the witness and bar the testimony.  Whether the [c]ourt is required to balance the violation against the possible prejudice to the defendant and fashion a remedy which will address the prejudice and, if at all possible, that remedy should be something less than the ultimate remedy of barring the evidence.  It seems to me that any possible prejudice to the defendant here can be awarded [
sic
] by affording the defendant--or the attorney--[an opportunity] to interview [the witnesses] ***.  So, what I will do is I will order the State to tender forthwith to [defense counsel] the various exhibits that they have just referred to.  He may have as much time as he wishes, and he needs to speak with [the witnesses] and go over [their] involvement in the case with the exhibits themselves.  I believe, having done that, we will have addressed any possible prejudice to the defendant, and we can then proceed with the case and I will not bar the testimony of [the witnesses].  I, of course, will give [defense counsel] the opportunity to point out any additional prejudice he may feel exists after his interview ***.

So we will be in recess to afford the defense whatever opportunity they need to talk to [the witnesses]."

The trial court then recessed for approximately 20 minutes to allow defense counsel to interview both of the State's previously undisclosed witnesses.  When the trial court resumed the proceeding, the trial court asked if there was "[a]nything further before we bring in the jury."  Defense counsel stated, "No, your Honor."  Therefore, despite the opportunity, defendant failed to argue that the brief interview with the State's previously undisclosed witnesses did not alleviate the prejudice to him.  We find that the trial court's decision to allow defense counsel an opportunity to interview the State's two previously undisclosed chain-of-custody witnesses was sufficient to alleviate any prejudice.  Therefore, the trial court did not abuse its discretion in permitting the State to call the previously undisclosed chain-of-custody witnesses.

E. Sufficiency of the Evidence

Defendant next argues that the trial court erred by failing to grant his motion for directed verdict because the State's evidence did not prove him guilty beyond a reasonable doubt of armed robbery or attempted aggravated criminal sexual assault.  We disagree.

When a defendant challenges the sufficiency of the evidence supporting his conviction, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.  
People v. Brooks
, 187 Ill. 2d 91, 132, 718 N.E.2d 88, 111 (1999).  The trier of fact bears the responsibility of (1) determining the witnesses' credibility, (2) determining the weight given to their testimony, (3) resolving conflicts in the evidence, and (4) drawing reasonable inferences from the evidence.  
Brooks
, 187 Ill. 2d at 132, 718 N.E.2d at 111.  A jury need not accept or reject all of a witness' testimony but may attribute different weight to different portions of it.  
People v. Cobbins
, 162 Ill. App. 3d 1010, 1025, 516 N.E.2d 382, 393 (1987).  We will not substitute our judgment for that of the trier of fact on these matters.  
Brooks
, 187 Ill. 2d at 132, 718 N.E.2d at 111.

Defendant was charged with attempted aggravated criminal sexual assault.  "A person commits an attempt when, with intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense."  720 ILCS 5/8-4(a) (West 1996).  An accused commits criminal sexual assault if he "commits an act of sexual penetration by the use of force or threat of force."  720 ILCS 5/12-13(a)(1) (West Supp. 1997).  Sexual penetration means:

"any contact, however slight, between the sex organ or anus of one person by an object, the sex organ, mouth[,] or anus of another person, or any intrusion, however slight, of any part of the body of one person or of any animal or object into the sex organ or anus of another person, including but not limited to cunnilingus, fellatio[,] or anal penetration."  720 ILCS 5/12-12(f) (West 1996).

Such an offense becomes aggravated criminal sexual assault when during the commission of the offense the accused (1) displayed, threatened to use, or used a dangerous weapon (720 ILCS 5/12-14(a)(1) (West Supp. 1997)); (2) caused bodily harm to the victim (720 ILCS 5/12-14(a)(2) (West Supp. 1997)); (3) acted in such a manner to threaten or endanger the life of the victim or any other person (720 ILCS 5/12-14(a)(3) (West Supp. 1997)); or (4) perpetrated the criminal sexual assault during the course of the commission or attempted commission of any other felony by the accused (720 ILCS 5/12-14(a)(4) (West Supp. 1997)).

The only two witnesses to defendant's conduct, J.S. and Robinson, both testified that, while Robinson unfastened his pants to expose his penis, defendant forced J.S. head toward Robinson's penis and told her to "suck his dick."  Both J.S. and Robinson testified that during this act defendant carried the BB handgun, threatened J.S., and hit her across the face.  Therefore, the jury could reasonably have believed the witnesses' testimonies over defendant's denial and found defendant guilty beyond a reasonable doubt of attempted aggravated criminal sexual assault.

Defendant also challenges the sufficiency of the evidence for his armed robbery conviction under the same rationale that he argued on the trial court's refusal to give the instruction on the lesser included offense of robbery.  We rejected that argument earlier, and we do not find it persuasive now.

At defendant's sentencing hearing, the trial court commented on the sufficiency of the evidence supporting defendant's convictions.  The trial court stated:

"First of all, the defendant's steadfast and emotional denials of guilt are absurd on this record.  Seldom has this [c]ourt had the benefit of this degree of comfort as to the jury's resolution of the factual issues and the charges against the defendant.  If anything, the jury bent over backwards to give the defendant the benefit of any doubt, reasonable [or] otherwise, when they acquitted him of [h]ome [i]nvasion, apparently concluding that perhaps he and Mr. Robinson were admitted to the home after knocking as opposed to invading the home to commence the attack. [J.S.] had an uncommonly excellent opportunity to observe and identify her attacker because the ordeal was prolonged.  She was dragged through various rooms of the house and out onto the porch and indeed ironically had the opportunity to observe [defendant] in the glow of the porch light which [defendant] turned on so Mr. Robinson would have an excellent view of [defendant's] [handiwork] and the blood that was cascading down the face and the head of [J.S.].  As if that were not a sufficient opportunity to fill one with a reasonable degree of confidence as a human being can ever make so bold as to entertain, the defendant, by his own admission, had been to the home of [J.S.] twice that very day in daylight and had engaged her over rather extended conversation over various items that she had for sale at her garage sale.  And as if the opportunity of [J.S.] to [observe defendant] and to identify him were not sufficient enough, the police, when they apprehended [defendant], found under the very chair in which he was seated[] the pellet gun in question [which] still bore [J.S.'] blood.  Perhaps the loudest witness against [defendant] was one that never spoke a word and that was the pellet gun that looked so remarkably [like] a very real 9 millimeter or .45 semiautomatic.  This evidence is overwhelming.  And the [c]ourt undertakes the task of sentencing [defendant] without any doubt whatsoever, reasonable or otherwise, as to his guilt."  

We, too, find that the State presented sufficient evidence to permit the jury to find defendant guilty of armed robbery and attempt (aggravated criminal sexual assault) beyond a reasonable doubt.

F. Excessive Sentence

Defendant also argues that the trial court abused its discretion by imposing excessive sentences upon him for the convictions of armed robbery and attempted aggravated criminal sexual assault.  We disagree.

Sentencing is a matter within the trial court's discretion.  Absent an abuse of that discretion, the trial court's sentence may not be altered on review.  A sentence within the statutory range will not be deemed excessive unless it varies greatly with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense.  
People v. Spencer
, 303 Ill. App. 3d 861, 871, 709 N.E.2d 687, 694 (1999).  Moreover, the trial court is in the best position to assess the defendant's credibility, character, demeanor, mentality, habits, age, prior criminal history, rehabilitative potential, and the seriousness of the offense, and can, therefore, best determine a sentence that balances the need to protect society with the rehabilitation of the defendant.  
People v. Payne
, 294 Ill. App. 3d 254, 259, 689 N.E.2d 631, 634 (1998).

Ordinarily, armed robbery in violation of section 18-2(a) is a Class X felony punishable by a 6- to 30-year prison term.  720 ILCS 5/18-2(b) (West 1996); 730 ILCS 5/5-8-1(a)(3) (West Supp. 1997).  However, where the trial court finds that factors in aggravation are present, the trial court may sentence defendant to an extended prison term of not less than 30 years and not more than 60 years for a Class X felony.  730 ILCS 5/5-8-2(a)(2) (West 1996); 730 ILCS 5/5-5-3.2(b) (West Supp. 1997).  Additionally, attempted aggravated criminal sexual assault is a Class 1 felony, punishable by a 4- to 15-year prison term.  720 ILCS 5/8-4(c)(2) (West 1996); 720 ILCS 5/12-14(d)(1) (West Supp. 1997); 730 ILCS 5/5-8-1(a)(4) (West Supp. 1997).

We have previously excerpted portions of the trial court's comments made at sentencing that indicate that defendant had brutalized, terrorized, and humiliated J.S.  The trial court stated:

"With regard to the factors in aggravation that have been discussed, I do find that, of course, the conduct of the defendant caused serious harm.  He has a significant history of criminal activity indeed which spans uninterrupted an entire decade of the 90's, and certainly a sentence of some severity is necessary to deter others from this type of horrendous conduct. *** [C]ertainly the three elements of aggravation that are present here are present in such strength that [they] needn't the benefit of a weak fourth.  There is no mitigation--not very little, not hardly any--none."

The record indicates that the trial court considered all factors in mitigation and aggravation, the evidence presented by the State and defense counsel, and defendant's statement in allocution.  Therefore, the trial court considered the appropriate factors and sentenced defendant within the statutory range.  Moreover, based on the trial court's finding that defendant had an extensive criminal history, the trial court's imposition of an extended term does not violate 
Apprendi v. New Jersey
, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).  
People v. Dillard
, 319 Ill. App. 3d 102, 107-09, 745 N.E.2d 185, 189-91 (200l).  We find that the trial court did not abuse its discretion in sentencing defendant.

G. Truth-In-Sentencing

Last, defendant argues that the trial court improperly applied the truth-in-sentencing statute (Pub. Act 90-592, §5, eff. June 19, 1998 (1998 Ill. Laws at 1284-94)) to his armed robbery conviction.  We disagree.

Under the truth-in-sentencing statute, if the trial court makes a finding that a defendant inflicted great bodily harm during an armed robbery, then that defendant must serve 85% of the sentence imposed for the armed robbery offense.  Pub. Act 90-592, §5, eff. June 19, 1998 (1998 Ill. Laws at 1284-85).  Here, the trial court's explicit finding that defendant inflicted great bodily harm is supported by the record.  Therefore, the trial court did not err in applying the truth-in-sentencing statute.

[The preceding material is nonpublishable under Supreme Court Rule 23.]

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

McCULLOUGH, J., concurs.

STEIGMANN, P.J., specially concurs.

PRESIDING JUSTICE STEIGMANN, specially concurring:

Although I agree with the majority's decision, I write separately to address the mere-fact method of impeachment, which the supreme court has recently rejected for the second time.  The supreme court's decision two years ago in 
People v. Atkinson
, 186 Ill. 2d 450, 713 N.E.2d 532 (1999), was deeply flawed, and the supreme court in 
People v. Cox
, 195 Ill. 2d 378, ___ N.E.2d ___ (2001),  reaffirmed the erroneous position it had taken in 
Atkinson
. 

Under the mere-fact method of impeachment, a jury is permitted to learn only of the "mere-fact" of a witness' prior conviction but not the nature of that conviction.  Thus, the jury learns, for example, that the defendant on trial is a convicted felon but is not told what felony he committed.  The mere-fact method permits the State to put before the jury information it needs for evaluating the testifying defendant's credibility.  At the same time, that method reduces the prejudice the defendant suffers.  

In 
Atkinson
, the supreme court rejected the mere-fact method and explained, 
inter
 
alia
, as follows: 

"Our case law interpreting [
People v. Montgomery
, 47 Ill. 2d 510, 268 N.E.2d 695 (1971),] suggests that it is the nature of a past conviction, not merely the fact of it, that aids the jury in assessing a witness' credibility. [Citations.]  The mere-fact approach undermines the 
Montgomery
 rule and inhibits the jury's evaluation of a witness' credibility by eliminating the jury's consideration of the nature of the past crime."  
Atkinson
, 186 Ill. 2d at 458, 713 N.E.2d at 536.  

For the reasons set forth in the specially concurring opinion in 
People v. Kunze
, 193 Ill. App. 3d 708, 728-36, 550 N.E.2d 284, 297-303 (1990) (Steigmann, J., specially concurring) (which the supreme court in 
Atkinson
 explicitly referred to as being the source of the mere-fact method (
Atkinson
, 186 Ill. 2d at 457, 713 N.E.2d at 535)), the supreme court is wrong.  When a defendant on trial for burglary is impeached with his two prior burglary convictions (as happened in 
Atkinson
), the jury is not aided in assessing the defendant's credibility; instead, the defendant is denied his right to a fair trial.  The jury in 
Atkinson
, when deciding whether the defendant had committed a burglary, could not likely evaluate the evidence against the defendant fairly once the jury heard of his two prior burglary convictions. 

As a second reason for rejecting the mere-fact method of impeachment, the supreme court in 
Atkinson
 cited "potential prejudice to the defendant."  
Atkinson
, 186 Ill. 2d at 459, 713 N.E.2d at 536.  Specifically, the court indicated its concern that telling a jury only that defendant was convicted of a felony without providing the exact nature of the offense "unavoidably invites jury speculation about the nature of the prior crime.  There is a potential danger that the jury would speculate that the defendant was previously convicted of a more serious crime."  
Atkinson
, 186 Ill. 2d at 459, 713 N.E.2d at 536.  This objection, of course, is inapposite because it presumes that the mere-fact method is somehow 
forced
 upon a defendant.  However, as explained in the specially concurring opinion in 
Kunze
, such a forced situation could never occur because an exception to the use of the mere-fact method exists when "the defendant chooses to have the jury informed of his prior conviction for impeachment purposes in the traditional way, including the name of the offense(s) of which he stands convicted."  
Kunze
, 193 Ill. App. 3d at 732, 550 N.E.2d at 300 (Steigmann, J., specially concurring).

The suggestion in 
Atkinson
 that "the possibility of  resulting prejudice to the defendant from revealing the nature of the prior conviction is controlled by the judicial balancing test set forth in the third prong of 
Montgomery
" (
Atkinson
, 186 Ill. 2d at 459, 713 N.E.2d at 537) will not provide much solace to defendants who, like the defendant in 
Atkinson
, have been deprived of their right to a fair trial.  After all, under what circumstances could a panel of the Illinois Appellate Court conclude that a trial court abused its discretion under 
Montgomery
 by permitting a jury to be told that, for instance, a defendant standing trial for rape had two prior rape convictions when, in 
Atkinson
, the supreme court explicitly approved a trial court's 
Montgomery
 analysis that resulted in a defendant standing trial for burglary being impeached with two prior burglary convictions?   

The 
Atkinson
 approach achieves a reverse "judicial trifecta":  everyone loses, the parties as well as the trial courts. 

The State is harmed because, in a case in which the defendant's credibility is a legitimate issue, the State may not be permitted to inform the jury, when it evaluates a defendant's credibility, that he is a convicted felon.  This will be the result whenever the trial court decides to keep out that prior felony conviction because it is for the same offense for which a defendant is standing trial.  Such a defendant will be permitted to testify as if he had no criminal history because the prejudice prong outweighs the probative value.

A defendant is harmed because if the trial court does allow in his prior felony conviction 
by
 
name
, he is, for all practical purposes, convicted.  Thus, he must either forego testifying or risk being deprived of his right to a fair trial.  

Trial courts throughout Illinois are harmed because the supreme court has taken away their discretion to use the mere-fact method when, in their judgment, doing so would be appropriate and fair.  Trial courts are thus left with the unhappy choice of depriving a jury of important information it needs when evaluating a defendant's credibility or depriving that defendant of his right to a fair trial.  

Courts, like other human institutions, sometimes make mistakes.  The Supreme Court of Illinois did so in 
Atkinson
.  In 
Cox
, the court had a chance to undo its mistake but instead embraced it.  While the new supreme court may revisit the issue, the citizens of this state may need to look to the real policy-making body of Illinois, the General Assembly, to undo the approach stated in 
Atkinson
 and to enact the mere-fact method of impeachment by statute, at least to the extent of giving trial courts the discretion to decide whether to use it.