THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ROBIN K. STEWART, Defendant-Appellant.

Second District   No. 2—90—0426

Opinion filed March 30, 1992.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, and Dwight H. O'Keefe, of Brown, Hay & Stephens, of Springfield, for appellant.

Michael J. Waller, State's Attorney, of Waukegan (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

A jury in the circuit court of Lake County convicted defendant, Robin Stewart, of attempted murder (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(a), 9—1(a)(1)) and armed violence (Ill. Rev. Stat. 1989, ch. 38, par. 33A—2), and the court sentenced him to a term of 34 years' imprisonment. Defendant appeals, contending (1) that the court erred in refusing to declare a mistrial for the State's noncompliance with discovery and (2) that the court erred in sentencing him to an extended term.

At the center of this case is a love triangle. Defendant was indicted for the attempted murder of David Moffat. Moffat was engaged in a relationship with Desiree Tarello. Defendant and Tarello had previously cohabited and had a child, Robin, Jr., together. The evidence demonstrated that defendant was jealous of Tarello's relationship with Moffat.

On August 31, 1989, Moffat was baby-sitting Robin, Jr., at Tarello's apartment. He had relieved Eric Petersen, a neighbor of Tarello's, who had been watching him earlier in the evening. Late that evening or early the next morning, defendant let himself into the apartment with a key. Moffat testified that he arose to shake defendant's hand and defendant began stabbing him with a knife. Defendant testified that Moffat was the aggressor. According to defendant, Moffat attacked him with a pool cue, and defendant drew his knife merely to keep Moffat away from him. Moffat eventually collapsed and defendant left the apartment.

Moffat was taken to the hospital. Two doctors, the emergency room physician and a surgeon, described Moffat's wounds and his treatment. The surgeon, Dr. Ryan, noted 21 to 22 separate injuries. The emergency room doctor, Dr. Gillespie, opined that if Moffat had not received immediate medical attention, he would have died from his wounds. Police officers described finding Moffat in a pool of blood and finding a trail of blood throughout the apartment.

Based on this evidence, the jury found defendant guilty of attempted murder and armed violence. Finding that the offense was committed in an exceptionally brutal and heinous fashion, the court sentenced defendant to an extended-term sentence of 34 years' imprisonment. (See Ill. Rev. Stat. 1989, ch. 38, pars. 1005—5—3.2(b)(2),

1005—8—2(a)(2).) The court denied defendant's post-trial motion, and he appeals.

Defendant's first contention on appeal is that the court committed reversible error in denying his motion for a mistrial based on the State's failure to comply with discovery. In response, the State does not contend that no violation occurred, but argues that a mistrial was too severe a sanction under the circumstances and that defendant declined to avail himself of less drastic remedies.

Prior to trial the court entered an order requiring the State to provide defendant with, among other things, "any written or recorded statements and the substance of any oral statements made by the accused or by a codefendant, and a list of witnesses to the making and acknowledgement of such statements." (See 134 Ill. 2d R. 412 (a)(ii).) At trial defendant raised, among other things, the issue of self-defense. On direct examination, Moffat testified that sometime prior to August 31 he had a telephone conversation with defendant in which defendant said, "come on over, Dave, come on over, *** I'm going to kick your mother f------ ass." Defendant immediately moved for a mistrial on the ground that the State had not provided the substance of this oral statement in discovery in violation of Rule 412 and the court's order.

Although the prosecutor claimed that he had orally complied with discovery, the court apparently believed that the statement should have been turned over and was not. The court stated it would bar further testimony and instruct the jury to disregard the remark already made. Defense counsel responded that he did not want the testimony barred. The court thereafter recessed the trial to allow defense counsel to interview the witness. Defendant did not request a further continuance, but renewed his demand for a mistrial.

Defendant contends that the court should have declared a mistrial based on the State's violation of Rule 412. The State responds that, even if Rule 412 was violated, defendant waived this issue by failing to request a continuance and, in any event, the sanction of a mistrial was too severe.

Supreme Court Rule 415 provides an array of sanctions for a discovery violation. (134 Ill. 2d R. 415.) The court can order disclosure, grant a continuance, exclude the evidence or enter such an order as seems just under the circumstances. The correct sanction to be applied is left to the trial court's discretion, and the judgment of the trial court is given great weight. (*People v. Morgan* (1986), 112 Ill. 2d 111, 135; *People v. Weaver* (1982), 92 Ill. 2d 545, 558-59.) Declaring a mistrial is a "drastic sanction"; generally a trial court can, by sustain-

ing an objection and instructing the jury to disregard the statement, cure any error. (*Morgan*, 112 Ill. 2d at 135.) A new trial for a discovery violation should only be granted where defendant is prejudiced and the trial court fails to eliminate the prejudice. *People v. Eliason* (1983), 117 Ill. App. 3d 683, 693.

■■ In the instant case, defendant has simply failed to demonstrate any prejudice from the alleged discovery violation. The trial court offered defendant the most severe sanction available short of a mistrial: exclusion of the evidence and an instruction to the jury to disregard the statement it had already heard. Defense counsel rejected this sanction because he wanted the statement admitted for strategic reasons.

As noted, defendant relied primarily on the defense of self-defense, and the record contains some evidence to support this defense. Defendant testified that Moffat initiated the confrontation of August 31. Moffat himself testified regarding a pool cue which he kept for protection. Tarello's sister testified that Moffat once talked to her about the possibility of blowing up defendant's car (although she did not believe he was serious). However, Moffat also testified that he had no reason to fear defendant.

Considering this evidence, defense counsel was justified in believing that defendant's threat to "kick [Moffat's] *** ass" could potentially have cut both ways. While in one respect it tended to undermine the self-defense theory by showing that defendant made prior threats against Moffat, it also tended to impeach Moffat's testimony that he was not afraid of defendant, thus supporting at least an inference that Moffat was the aggressor in the fight.

Given defendant's position that he did not want the statement stricken, we fail to see how he could have been prejudiced by the State's failure to disclose the statement in discovery. After defense counsel declined the court's offer to strike the statement, the court immediately recessed the trial to permit defense counsel to interview Moffat. In addition, we note that the State had previously provided Moffat's name on its list of potential witnesses, so that defense counsel at least had the opportunity to interview him prior to trial. Defendant does not explain how his trial strategy would have been significantly different had he known of Moffat's proposed testimony prior to trial. Moreover, as defendant did not even request a continuance following Moffat's allegedly unexpected testimony, he "did not preserve his contention that he could have materially mitigated the harmful effect of the evidence had he been prepared to meet it." *People v. Nelson* (1980), 92 Ill. App. 3d 35, 45.

The cases cited by defendant are distinguishable. In *Nelson* and *People v. Greer* (1980), 79 Ill. 2d 103, the courts held that a new trial was not required. In *People v. Boucher* (1978), 62 Ill. App. 3d 436, and *People v. Miles* (1980), 82 Ill. App. 3d 922, the State introduced in rebuttal undisclosed statements which directly contradicted defendants' testimony. In the instant case, the undisclosed statement was introduced in the State's case in chief, and defendant thus still had an opportunity to respond to it during his portion of the case. Moreover, defendant unequivocally stated that he did not object to the statement being admitted. A mistrial could not have aided defendant's case in any material respect.

■■ Defendant's second contention is that the court erred in sentencing him pursuant to the extended-term provisions of the Unified Code of Corrections. The State responds that the circumstances of the crime were sufficiently brutal and heinous to justify the extended sentence. The imposition of a sentence is a matter within the trial court's discretion, and its decision will not be disturbed on review absent an abuse of that discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 153.

The imposition of an extended-term sentence does not require proof of the infliction of torture or unnecessary pain. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 501.) Courts have not developed any precise standards for determining when an extended-term sentence is appropriate. Rather, consideration of the issue depends upon the facts and circumstances of each case.

Defendant relies primarily on *People v. Kane* (1986), 140 Ill. App. 3d 928, in support of his argument that the court abused its discretion in imposing an extended-term sentence in this case. In *Kane*, the appellate court vacated an extended-term sentence where defendant, with premeditation, killed a cab driver with a single shot to the head. The court held that, while an element of brutality is inherent in any murder, the circumstances were not so "exceptional" as to warrant an extended-term sentence. *Kane*, 140 Ill. App. 3d at 930-31.

*Kane* is inapposite to the present case. It has been held that the legislature, in enacting the extended-term sentencing provisions, did not intend to convert every offense into an exceptional one justifying an enhanced sentence. (*People v. Andrews* (1989), 132 Ill. 2d 451, 466; *People v. Evans* (1981), 87 Ill. 2d 77, 88-89.) In *Kane*, the manner of killing, a single gunshot to the head, was no more brutal than necessary to accomplish the criminal objective. In essence, the court found that while the act was undoubtedly cold-blooded and brutal, it was not *exceptionally* brutal. Obviously, a degree of brutality is implicit in the

murder statute itself and the ordinary sentence provided for that offense. There was simply no evidence of brutality beyond what was necessary to the murder. The *Kane* court also noted defendant's young age and his expression of remorse following the act.

In the instant case, there is sufficient evidence of the "brutal and heinous" nature of the attack to justify the extended-term sentence. The jury found that defendant committed an unprovoked attack on Moffat. Defendant's three-year-old son was present in the apartment at the time. Defendant repeatedly stabbed Moffat, then left the apartment without calling an ambulance. The emergency room doctor who treated Moffat opined that without immediate medical attention he probably would have died. This doctor and the surgeon described in graphic detail the wounds which Moffat received. Dr. Ryan recorded 21 or 22 separate injuries throughout his body. Dr. Gillespie observed that when Moffat was brought to the emergency room he suffered from "numerous stab wounds including wounds to the chest, had decreased breath sounds and signs of bleeding from multiple sites." A surgeon was called because of a stab wound penetrating the abdomen and collapsed lung or lungs.

The court noted that this was "a close case" for imposition of an extended term and the sentence reflects that finding. The sentence imposed is only four years longer than the maximum nonextended term for attempted murder. Given the numerous injuries inflicted on the victim, we do not find that the court abused its discretion in imposing an extended-term sentence.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

INGLIS, P.J., and NICKELS, J., concur.