THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
GEORGE N. KOUTSAKIS, Defendant-Appellee.

Third District   No. 3—93—0326

Opinion filed December 23, 1993.—Rehearing denied February 3, 1994.

Marc Bernabei, State's Attorney, of Princeton (John X. Breslin and Lawrence Michael Kaschak, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Pierson, Maloney & Rayfield, of Princeton (Matthew A. Maloney, of counsel), and Freedman, Boyd, Peifer, Hollander, Guttmann, of Albuquerque, New Mexico (Nancy Hollander, of counsel), for appellee.

PRESIDING JUSTICE McCUSKEY delivered the opinion of the court:

The defendant, George N. Koutsakis (Koutsakis), was stopped by the Illinois State Police (State Police) while driving on Interstate 80 (I-80) in Bureau County. His vehicle was searched, and he was later charged by indictment with the offense of cannabis trafficking (Ill. Rev. Stat. 1991, ch. 56½, par. 705.1).

Koutsakis filed a motion for pretrial discovery requesting the tape recording of radio transmissions (tape) made by the State Police officers who stopped and searched his vehicle. The State did not produce the tape. The State destroyed the tape two days after it received Koutsakis' discovery request. Koutsakis responded to the destruction of the tape by seeking sanctions against the State. After a hearing, the trial court found a discovery violation and determined that appropriate sanctions were warranted. The court entered an order limiting the testimony of the police officers involved in the stop and search of Koutsakis' vehicle. The State appeals.

The State raises two issues on appeal in support of its claim that the trial court erroneously entered the sanction order. First, the State argues that Koutsakis failed to meet his burden of showing that the requested tape was material to the case and favorable to him. Next, the State argues that because the erasure of the tape was not the result of bad faith, the court should not have imposed sanctions after the State provided a sufficient substitute for the tape. Following a careful review of the record and applicable law, we find no error in the trial court's order.

We conclude that the tape was clearly discoverable under Supreme Court Rule 412 (Rule 412) (134 Ill. 2d R. 412). Also, we hold that the limited sanction order imposed by the trial court was not an abuse of discretion. Accordingly, we affirm.

On November 11, 1992, Koutsakis was stopped on I-80 by Officer James Lower. Koutsakis was driving a rented vehicle with California license plates. Officer Craig Graham later arrived at the scene with a drug-sniffing police dog (dog). Koutsakis' vehicle was searched, and 205 pounds of cannabis were found. Koutsakis was arrested. He was charged with the offense of cannabis trafficking.

On December 9, 1992, Koutsakis filed a motion for pretrial discovery, requesting, among other things, "the original or a copy of any radio transmissions *** between any of the Illinois State Police Officers who conducted the investigation leading up to the arrest of the defendant." The request for the tape was hand-delivered to the Bureau County State's Attorney's office on December 9, 1992.

Subsequently, on February 9, 1993, Koutsakis filed a motion to suppress evidence and the statements he made following the search of his vehicle. The State Police asserted that they stopped Koutsakis' vehicle because it was traveling four miles per hour faster than the posted speed limit of 65 miles per hour. Koutsakis argued that the stop and search was illegal. Koutsakis claimed in his motion to suppress: (1) that he was driving at the posted speed limit and obeying all traffic rules; (2) that he was placed in Lower's patrol car and detained for an unreasonable amount of time; (3) that his detention was longer than reasonably necessary so the State Police could gain additional time to bring the dog to the scene; and (4) that he did not voluntarily consent to a search of his vehicle. Based on these allegations, Koutsakis asked the trial court to suppress the evidence seized from his vehicle and the oral statements he made after the dog sniffed his vehicle.

Also on February 9, 1993, Koutsakis filed a motion for the disclosure and production of various documents. Koutsakis again requested that the State produce the tape. He also sought various documents relating to other traffic stops the State Police made on I-80 from January 1, 1992, through November 11, 1992. Both the Bureau County State's Attorney and the State Police filed motions objecting to Koutsakis' discovery request.

On February 26, 1993, a hearing was held on Koutsakis' discovery requests. At the hearing, Officers Lower and Graham testified about their standard patrol practices on I-80. Graham said that he did not recall a recent vehicle stop on I-80 where his dog alerted to the presence of drugs but no drugs were discovered during a search of the vehicle. Koutsakis called Peso Chavez as a witness. Chavez testified that, on February 18, 1993, he was driving on I-80 in a rented vehicle with California license plates. Chavez stated that his vehicle was stopped, and he was detained by the State Police for a long period of

time. Thereafter, Chavez said that Officer Graham arrived with his dog, and the dog sniffed Chavez' vehicle. An officer told Chavez that the dog alerted to the presence of drugs. However, after two thorough searches of the vehicle, no drugs were found. As a result of this testimony, the trial court later found that Officer Graham's testimony was "less than candid."

At the conclusion of the February 26, 1993, hearing, the court ordered the State to produce the information pertaining to the stop of Koutsakis' vehicle on November 11, 1992. The court also ordered the State to produce the information requested regarding the dog. The other discovery requests made by Koutsakis were denied by the court.

The attorney for the State Police responded to the court's discovery order by informing the court that the tapes used to record the officers' radio communications were recycled every 31 days "or how ever many days there are in a month." The attorney confessed to the court that the tape in question was no longer in existence. The attorney stated that the requested tape was destroyed even though the State Police routinely produce such tapes upon request.

On March 17, 1993, Koutsakis filed a motion for sanctions based upon the State's destruction of the tape. A hearing on the motion was held April 15, 1993. During the hearing, the attorney for the State Police indicated that they had 31 tapes available for recording daily radio communications. State Police procedure requires that a new tape be used each day. The Bureau County State's Attorney stated the practice of the State Police was to reuse each tape on the corresponding day of the following month. In keeping with this practice, the November 11, 1992, tape relating to Koutsakis' stop was reused in December and was erased on December 11, 1992.

Prior to the April 15, 1993, hearing, the State provided Koutsakis with the written radio logs (logs) involving the stop of his vehicle. At the hearing, the State presented the testimony of Julie Maxeiner, a communications supervisor with the State police. Maxeiner explained the various notations appearing on the logs. The logs showed that Lower called in the stop of Koutsakis' vehicle at 5:46 p.m. on November 11, 1992. At 6:04 p.m., Lower transmitted an activity code related to narcotics. At 6:07 p.m., Lower requested assistance and a tow truck. The logs did not include any information concerning Graham's activities. Also, the record shows that the time notations on some of the logs were inaccurate. Maxeiner testified that she did not know if the actual tape would have any information concerning the activities of Trooper Graham. Maxeiner also indicated the tape would include an accurate time for all radio transmissions. Following this

testimony, the State argued that sanctions should not be imposed because the destruction of the tape was inadvertent and the logs provided all the relevant information regarding Koutsakis' stop.

At the conclusion of the hearing, the trial court stated that it did not believe the tape was intentionally destroyed by the State. However, the court determined that a sanction against the State was appropriate. The court specifically noted that the logs provided *no* information regarding Graham's activities. Also, the logs did not disclose when Graham was called by Lower or when Graham arrived on the scene. The court recognized that the logs showed a period of 18 minutes that passed between the time Koutsakis' vehicle was stopped and the time when Lower transmitted the activity code related to narcotics. In addition, the court noted that Graham was less than candid during his sworn testimony.

After commenting on these facts, the court ordered a limited sanction against the State. The court held that Lower and Graham would not be allowed to testify concerning: (1) the time Lower stopped defendant's vehicle; (2) whether Lower requested information on any other vehicle at the same time; (3) the time Lower began writing the warning he gave Koutsakis for speeding; (4) the time Lower requested assistance from Graham; (5) Graham's location at the time he received Lower's request for assistance; (6) the information Lower transmitted to Graham regarding the need for assistance; and (7) the time Graham arrived at Koutsakis' vehicle with his dog. Following the entry of the court's sanction order, the State filed its certificate of impairment and notice of appeal.

On appeal, the State first argues that Koutsakis failed to meet his burden of showing that the requested tape was material to the case and favorable to him. The State relies on subsection (h) of Supreme Court Rule 412, which requires a showing of materiality before a court may order the disclosure of information to defense counsel. However, subsection (h) only applies to material and information "not covered by this rule." (134 Ill. 2d R. 412(h).) We agree with Koutsakis' argument that the requested tape *is* covered by Rule 412.

■ Rule 412 provides for the disclosure of materials and information within the State's possession. (*People v. Robinson* (1993), 157 Ill. 2d 68, 79.) Subsection (a) of Rule 412 provides, in pertinent part:

> "[T]he State shall, upon written motion of defense counsel, disclose to defense counsel the following material and information within its possession or control:
>
> (i) the names and last known addresses of persons whom the State intends to call as witnesses, *together with their rel-*

*evant written or recorded statements* \*\*\*." (Emphasis added.) (134 Ill. 2d R. 412(a)(i).)

Clearly, the requested tape contained the recorded statements of a State witness, Officer Lower. It also may have contained the recorded statement of Officer Graham.

Koutsakis filed a motion to suppress evidence claiming the stop of his vehicle and his lengthy detention were unreasonable. The State argued before the trial court that the issue presented by Koutsakis' motion to suppress was "whether there was an objectively viewed valid reason or reasons for the conduct of the police in this case." As a result, all parties here agree that a relevant issue is the reasonableness of the conduct of Officers Lower and Graham. We note that the recorded statements made by Officers Lower and Graham during the stop and detention of Koutsakis are clearly relevant to the issue of the reasonableness of the officers' conduct. In fact, the State has conceded that recorded tapes of State Police radio transmissions are routinely requested and produced. Based on these factors, we hold the State was required by Rule 412 to produce the tape when Koutsakis requested it in his written motion for pretrial discovery.

■ We further note that, where there is a request for specific evidence, a defendant does *not* need to show the exculpatory value of the evidence because the specific request puts the State on notice to preserve the evidence. (See *People v. Sleboda* (1988), 166 Ill. App. 3d 42, 53, 519 N.E.2d 512, 519.) Also, even though the request was made only two days before the destruction of the tape, subsection (f) of Rule 412 provides that "the prosecution has the duty to ensure that a flow of information is maintained between various investigative personnel and its office sufficient to place within its possession or control all material and information relevant to the accused." (*Robinson,* 157 Ill. 2d at 79.) Accordingly, we conclude that the State violated Rule 412 when it failed to produce the requested tape.

The State next argues that because the erasure of the tape was not the result of bad faith, the trial court erred in imposing sanctions after the State provided the logs as a sufficient substitute for the tape. We disagree with the State's analysis.

Supreme Court Rule 415(g) provides:

> "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, *or enter such other*

*order as it deems just under the circumstances."* (Emphasis added.) (134 Ill. 2d R. 415(g).)

Rule 415 provides the trial court with an appropriate array of sanctions for the violation of a discovery rule, including the exclusion of evidence. (*People v. Stewart* (1992), 227 Ill. App. 3d 26, 28, 590 N.E.2d 931, 933.) Once a trial court determines that a discovery violation has occurred, the court may impose any sanction which, in its discretion, it deems just. (*People v. Godina* (1991), 223 Ill. App. 3d 205, 210, 584 N.E.2d 523, 526.) The correct sanction to be applied for a discovery violation is a decision appropriately left to the discretion of the trial court, and its judgment shall be given great weight. *People v. Morgan* (1986), 112 Ill. 2d 111, 135, 492 N.E.2d 1303, 1312; *Stewart*, 227 Ill. App. 3d at 28, 590 N.E.2d at 933.

In spite of this authority, the State contends the court abused its discretion when it imposed sanctions after specifically finding that the State had unintentionally destroyed the tape. The record does not support the State's analysis. The State does not dispute the fact that the tape was erased following Koutsakis' discovery request. However, the State relies on *Arizona v. Youngblood* (1988), 488 U.S. 51, 102 L. Ed. 2d 281, 109 S. Ct. 333, and argues that a defendant seeking a sanction based upon destruction of evidence must show "bad faith" on the part of the State.

We agree with Koutsakis that *Youngblood* is distinguishable from the case at hand. In *Youngblood*, the defendant had not requested the production of the evidence prior to its destruction by the State. The Court in *Youngblood* held that, unless a defendant can show bad faith on the part of the police, the failure of the State to preserve potentially useful evidence does not constitute a denial of due process requiring the reversal of a criminal conviction. *Youngblood*, 488 U.S. at 58, 102 L. Ed. 2d at 289, 109 S. Ct. at 337; see also *People v. Ward* (1992), 154 Ill. 2d 272, 298-99, 609 N.E.2d 252, 262.

■ Here, the tape was requested by Koutsakis *before* the State destroyed it. Therefore, the State violated Rule 412 by not producing the tape. Courts in Illinois have recognized that a court may impose appropriate sanctions under Rule 415 even where the discovery violation is found to be inadvertent. (See *People v. Heinzmann* (1992), 232 Ill. App. 3d 557, 560-61, 597 N.E.2d 942, 944-45; *Godina*, 223 Ill. App. 3d at 210-11, 584 N.E.2d at 526-27.) Accordingly, based upon Rule 415 and the record before us, we conclude that appropriate sanctions may be imposed by the trial court after evidence has been destroyed following a discovery request even where there has been no showing of bad faith on the part of the State.

The State also contends that the trial court abused its discretion in imposing a sanction because it provided the logs as an adequate substitute for the tape. We do not agree. We initially note that the cases relied upon by the State are inapposite. The State relies upon *People v. Hall* (1992), 235 Ill. App. 3d 418, 601 N.E.2d 883, *People v. Vargas* (1983), 116 Ill. App. 3d 787, 452 N.E.2d 736, and *People v. Leannah* (1979), 72 Ill. App. 3d 504, 391 N.E.2d 187, as support for its position that sanctions should not have been imposed under these circumstances. Following oral argument, the State also cited *People v. Hoover* (1993), 250 Ill. App. 3d 338, 620 N.E.2d 1152, as additional authority. All of the cited cases involve an audiotape or videotape which was inadvertently lost or destroyed by the State.

In both *Hoover* and *Vargas*, the defendants argued that the loss or destruction of the evidence was a denial of their due process rights. Accordingly, the defendants in those cases were seeking the dismissal of the charges against them. The courts held that dismissal was not warranted under those circumstances. (*Hoover*, 250 Ill. App. 3d at 347-48, 620 N.E.2d at 1159; *Vargas*, 116 Ill. App. 3d at 792-96, 452 N.E.2d at 739-42.) In *Leannah*, the court held that it was an abuse of the trial court's discretion to dismiss a charge based upon the State's destruction of a videotape after the tape was requested by the defendant. (*Leannah*, 72 Ill. App. 3d at 506-08, 391 N.E.2d at 189-90.) The *Leannah* court specifically noted, however, that the trial court "could well have considered other sanctions in this case." (*Leannah*, 72 Ill. App. 3d at 508, 391 N.E.2d at 190.) Consequently, while *Hoover*, *Vargas*, and *Leannah* support a conclusion that dismissal of criminal charges may not be warranted when this type of evidence is destroyed, those cases do not support a conclusion that *no* sanction may be imposed in such situations. Additionally, we do not agree with the State's argument that the limited sanction imposed by the trial court was the equivalent of dismissing the charge against Koutsakis.

Similarly, in *Hall*, the court held that the trial court properly refused to bar the testimony of a State witness after a tape recording of a statement of the witness was lost by the State. (*Hall*, 235 Ill. App. 3d at 423-32, 601 N.E.2d at 888-94.) The court noted in *Hall*, however, that the defendant did not request any sanction short of barring the testimony of the witness. (*Hall*, 235 Ill. App. 3d at 424, 601 N.E.2d at 889.) Therefore, while *Hall* supports a conclusion that a total bar of a witness' testimony may not be warranted, it does *not* support a conclusion that a less severe sanction could not properly be imposed by the trial court.

In fact, a trial court may properly fashion a sanction for a discovery violation when it is proportionate to the magnitude of the violation. (See *People v. Brown* (1982), 106 Ill. App. 3d 1087, 1093, 436 N.E.2d 696, 700-01.) The trial court is in the best position to determine an appropriate sanction based upon the effect the discovery violation will have upon the defendant. See *People v. Rogers* (1984), 123 Ill. App. 3d 780, 786-87, 463 N.E.2d 211, 215.

Here, the State could not produce the tape related to the stop and search of Koutsakis' vehicle. The trial court determined that the appropriate sanction was to limit the testimony of the police officers involved in the stop and search. The court's order essentially precluded the officers from testifying concerning matters that may have been included on the tape. In fashioning this sanction, the court noted that the State Police logs were not an adequate substitute for the tape because the logs contained no information concerning Officer Graham's activities. The court also found that the failure to produce the tape was a material omission because Graham had already been less than candid during his in-court testimony. According to Maxeiner, the missing tape may have contained information regarding Officer Graham and would have contained an accurate time for all radio transmissions. Following our review of the record, we conclude that the trial court properly fashioned an appropriate sanction which was limited and proportionate to the discovery violation. Accordingly, we find no abuse of the court's discretion.

For the reasons indicated, the judgment of the circuit court of Bureau County is affirmed.

Affirmed.

SLATER and LYTTON, JJ., concur.