NOTICE
Decision filed 04/22/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250013-U

NO. 5-25-0013

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Jackson County. |
| | ) | |
| v. | ) | No. 24-CF-69 |
| | ) | |
| JEFFREY W. KNAPP, | ) | Honorable |
| | ) | Ralph R. Bloodworth III, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE HACKETT delivered the judgment of the court.
Justices Boie and Vaughan concurred in the judgment.

**ORDER**

¶ 1     *Held*:    The trial court's decision to dismiss the State's case as a sanction for the State's discovery violation was an abuse of discretion where there were more moderate measures available that would have furthered the goals of the discovery process.

¶ 2     In February 2024, the State charged the defendant, Jeffrey W. Knapp, with unauthorized video recording (720 ILCS 5/26-4(a-10) (West 2022)). Thereafter, on December 5, 2024, the defendant filed a motion for sanctions seeking dismissal of the charge based on the State's failure to ensure the complete production of the evidence collected during the investigation in this case. On December 13, 2024, the trial court granted the defendant's motion and dismissed the case without prejudice. On appeal, the State argues that the trial court abused its discretion in granting the dismissal where there was no discovery violation, or alternatively, if a discovery violation had

1

occurred, the trial court abused its discretion in failing to consider other more appropriate, less severe, sanctions. For the reasons that follow, we reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4      On February 1, 2024, the State charged the defendant, by information, with one count of unauthorized video recording (*id.*). The charge was based on the allegation that on or about November 25, 2021, the defendant knowingly made a video recording of H.H.'s intimate parts, without her consent, for the purpose of viewing the recording at a later time. On February 7, 2024, the defendant's counsel filed a motion for discovery, seeking, in pertinent parts, all written or recorded statements made by the defendant that would be offered into evidence and documents or tangible objects that the State intended to use in the hearing or trial or that were obtained from or belonged to the defendant. Subsequently, on May 20, 2024, a grand jury returned an indictment against the defendant for unauthorized video recording based on the above allegations.

¶ 5      During the June 13, 2024, post-indictment arraignment hearing, the defendant's counsel indicated that, while the State had provided preliminary reports from its files, there was a "larger body of the record" that was not provided due to the sensitive nature of the material. The State responded that it could not disseminate the material without committing a felony but noted that the defense could view the material in the state's attorney's office with advance notice. Defense counsel then noted that an inventory of the materials might be beneficial but that he would work with the State, as the prosecutor had been "very good so far."

¶ 6      On July 2, 2024, the defendant filed a motion to compel production of discovery, contending that the discovery produced by the State contained redacted or incomplete materials, photographs, or videos. The motion indicated that defense counsel had contacted the State and requested unredacted materials and any other materials that the State intended to use at trial. In

2

response, the State disclosed heavily redacted photograph clips from a video recording and advised that defense counsel could view any videos at the state's attorney's office. The motion asserted that it was critical that the defendant be present with counsel when viewing the materials but that the defendant lived in Topeka, Kansas. The motion also asserted that the State did not have authority to unilaterally redact the materials prior to providing them to defense counsel and that defense counsel and the defendant should be permitted to view the unredacted materials as long as the materials remained in defense counsel's exclusive possession.

¶ 7    During the September 6, 2024, case management conference, defense counsel indicated that the State possessed copies of unredacted videos and photographs that were received from law enforcement. While defense counsel noted that it had taken the State "a while" to get those materials, defense counsel did not believe that the State had done anything wrong. However, even though the State had received unredacted materials, defense counsel noted that the materials provided to the defense were heavily redacted and "just little screen graphs, little thumb nails of video portions, and [there] weren't *** any usable video clips or any photographs." Defense counsel argued that although the State had claimed that it was restricted from distributing those materials, the State had not cited to any authority that unilaterally permitted the State to keep the materials from defense counsel.

¶ 8    In response, the State noted that due to the sensitive nature of the videos and images, it could not redistribute the unredacted materials without also breaking the law. However, the State noted that it had repeatedly stated that defense counsel could view the "videos and *** images" at the state's attorney's office. The State also noted that if the trial court entered a protective order, it would provide the unredacted materials to defense counsel. After hearing the arguments, the trial court granted the motion to compel and ordered the State to provide the unredacted materials to

3

defense counsel. Defense counsel then requested another case management conference, noting that the State would likely need 45 days or longer to provide those materials. Thereafter, on September 12, 2024, the trial court entered a written order on the defendant's motion to compel, in which the trial court ordered the State to provide defense counsel with a complete, unredacted set of videos, photographs, and reports from the case.

¶ 9 On December 5, 2024, the defendant filed a motion for sanctions based on the State's failure to ensure the complete production of the evidence collected during the investigation. The motion acknowledged that the State had initially provided an investigative report exceeding 100 pages, a 9-page digital forensic report, and various other records; and then subsequently produced a thumb drive containing one pornographic video allegedly relevant to the case. However, the motion argued that the disclosed investigative reports and digital analysis referenced copies of original documents, videos, social media posts, text messages, and other primary evidence that had not been provided to defense counsel, even though the State had claimed that the thumb drive contained " 'everything that the State had.' "

¶ 10 The motion noted that after discovering these deficiencies, defense counsel made repeated attempts to contact the State to remedy the situation. The motion clarified that defense counsel was not alleging that the State intentionally withheld evidence. Instead, the motion alleged that the State, as the liaison with the investigative agencies, was responsible for ensuring the complete production of all evidence collected during the investigation. The motion argued that the State's failure to produce the complete case file violated the trial court's discovery order, substantially impaired the defendant's trial preparation, failed to satisfy the State's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and left significant volumes of seized and analyzed evidence unproduced. Thus, the motion requested that the State be ordered to show cause for its

4

noncompliance with the trial court's discovery order and, as a sanction, that the charge against the defendant be dismissed with prejudice.

¶ 11    On December 13, 2024, the trial court held a hearing on the defendant's motion for sanctions, at which the trial court only heard arguments from the parties, as no evidence was presented. During the hearing, defense counsel argued that the investigative report referenced "two *** electronics that were part of the corpus of the State's case," which included various hard drives, text messages, and emails, none of which were produced in discovery. Defense counsel acknowledged that the State had disclosed a thumb drive containing a single video but noted that the video did not align with a screen capture of a different redacted video clip that had previously been produced. Thus, defense counsel argued that he knew that there were other materials that were part of the investigative packet that had not been produced in discovery.

¶ 12    Defense counsel indicated that he had no doubt that the State had disclosed everything in its possession, noting that he had conversations with the State where the State had given assurances that the materials were not included in its files. However, defense counsel indicated that he had repeatedly asked the State to contact the investigators to get the missing records, but he had been frustrated by the State's failure to make any real effort to obtain the materials, or if there was any effort by the State, he was frustrated by the State's failure to communicate about its efforts. Defense counsel argued that without the complete file, he could not adequately prepare a defense on behalf of the defendant. Defense counsel added that he had no option but to file a motion for sanctions, as the trial court had already ordered production of the materials and disclosure was required under *Brady*. Thus, defense counsel argued that the State should not be allowed to proceed under these circumstances and that dismissal was the appropriate remedy.

5

¶ 13    The State responded that it had given defense counsel everything in its possession and that, every time defense counsel contacted the State about discovery issues, the State reached out to the investigator in an attempt to diligently fix the issue. The State explained that although the case was being handled by the Southern Illinois University (SIU) police, the SIU police did not have the capability to download information from hard drives. Thus, the SIU police transferred the hard drives to the Madison County Sheriff's Office for their assistance with downloading the information. The State also explained that the investigator, who completed the hard drive searches and downloads, wrote an additional report explaining that it was common for incomplete files to be "carved from the devices," and that these "carved files" may be partial videos or images. The report further explained that the downloaded files may be incomplete for several reasons, including files being deleted prior to the devices being examined or files being encrypted by the user. The State then acknowledged that it could not turn over a specific video but noted that the investigator's report explained why the State was only able to produce images from that video. The State argued that it had disclosed all of the evidence within its possession.

¶ 14    As for the referenced text messages, the State noted that it had no knowledge about text messages beyond what was referenced in the report. The State indicated that the case involved voluminous records and technology and that the investigating officer was "still working through the technology." However, the State noted that discovery was ongoing and that the materials that defense counsel sought might be available in the future. The State also argued that defense counsel had failed to establish what the missing information would show or how the defendant would be prejudiced by not possessing the specific information. Thus, the State argued that sanctions were not appropriate at this time.

6

¶ 15    Defense counsel then read from the April 15, 2022, SIU police department incident report, which listed the seized property that was transferred to the Madison County Sheriff's Department. Defense counsel noted that the officer also referenced various social media accounts, including a Snapchat social media account named "sagedagreeneyes" that the officer believed the defendant had created as a fake account pretending to be the victim. Defense counsel argued that the officer had reviewed Facebook accounts, text message exchanges, and various videos that were well beyond what was claimed to be included in the case file. Defense counsel then questioned how the officer was able to view those materials if they had been deleted by the defendant as the State speculated. Defense counsel explained that, in these types of cases, an officer usually cloned the materials and used an exact replica for testing and observation, so that the original could be preserved. Defense counsel argued that he was entitled to copies of the inspected items, "not for just incriminating, but potentially exculpatory material." Defense counsel contended that there was a "whole ream of information that [was] part of the corpus" that should have been produced and that the defense was entitled to in order to be able to adequately prepare a defense. Defense counsel further argued that the State's excuse that the investigator was still working through the technology was no longer a legitimate excuse, as the defendant continued to be subject to an indictment and pretrial restrictions. Defense counsel acknowledged that they had not yet invoked the defendant's right to a speedy trial but noted that they would if necessary.

¶ 16    Defense counsel then argued that the State's failure to produce the materials was in direct violation of the trial court's previous discovery order and that this was an egregious discovery violation. Defense counsel also argued that the State was not taking the situation seriously and that if the State was operating in good faith, the State would have brought its investigator to the hearing

7

to account for the missing information and/or to explain when the State would be able to produce the complete file.

¶ 17     In response, the State explained that the list of seized items in the initial report was based on an initial look at the evidence, which was not the same as cloning the device. The State noted that it had not seen any of the information that defense counsel claimed was missing but that it had produced all of the evidence that the indictment was based on and the evidence that would be presented at trial. The State noted that discovery was ongoing until trial, that the investigation was ongoing, and that it could not provide a certain date as to when the technology review would be complete. The State again argued that it had not violated any of the discovery rules, as it had produced everything under its control and had attempted to locate the information requested by defense counsel.

¶ 18     Defense counsel then read the following portion of the investigating officer's report:

"Saved messages on the SnapChat account also revealed consistent mode of operation for [the defendant]. He meets girls online primarily through Instagram or from a website called something to the effect of seeking arrangements. [The defendant] asked the female if she is interested in having a sugar daddy. The female then asked what the relationship would entail. [The defendant] responds something to the effect of, 'I am basically looking for a nasty lil slut that keep up with me sexually.' "

Defense counsel explained that the Snapchat messages described in this report were never produced. Counsel noted that this was just a "little passage" but that there was a body of videos that the officer had looked at and referred to that had not been disclosed. Counsel then argued that the idea that this information was not material was ridiculous, as the officer, in the report, was referring to the defendant's mode of operation. Counsel argued that the State had acted in bad faith

and that the defendant had been under indictment for nine months. Counsel contended that for the trial court's orders to have meaning, there needed to be consequences, and the only consequence that the State would understand was dismissal of the case. Counsel argued that the State had a duty to disclose the materials under the constitution and under *Brady*, so that defense counsel could prepare the defendant's case.

¶ 19    The State responded that once information was obtained from the police, it was immediately disclosed to defense counsel. However, the State noted that it did not possess the information that defense counsel sought. The State also noted that the officers were continuing to investigate and that as soon as additional information was received, the State would provide that information to defense counsel. Thus, the State argued that sanctions were not appropriate because the State had done nothing wrong. Defense counsel then suggested that the State could re-indict the defendant once the State was ready to prosecute but argued that the defendant should not remain under a felony indictment while the State attempted to obtain evidence to prove its case beyond a reasonable doubt.

¶ 20    After hearing the arguments of counsel, the trial court, noting that it had entered a previous discovery order, and that the parties had worked through these issues a number of times, granted the defendant's motion for sanctions and dismissed the case against the defendant without prejudice. However, the trial court noted that the State could refile the matter. The State then filed a timely notice of appeal.

¶ 21                                II. ANALYSIS

¶ 22                          A. Appellate Jurisdiction

¶ 23    Initially, we conclude that we have jurisdiction to hear the State's appeal. Although the defendant does not question our jurisdiction, we have an independent obligation to consider our

9

jurisdiction in this case. *People v. Mattis*, 367 Ill. App. 3d 432, 435 (2006). Illinois Supreme Court Rule 604(a) (eff. Apr. 15, 2024) authorizes the State to appeal from an order or judgment that has the substantive effect of dismissing a charge for any of the grounds enumerated in section 114-1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-1 (West 2024)). In addition, the State has the right to appeal orders that effectively result in the dismissal of its case on any grounds, even those not enumerated in section 114-1, and this includes dismissals based on discovery violations. *People v. Love*, 39 Ill. 2d 436, 439 (1968); *People v. Harris*, 68 Ill. App. 3d 12, 15 (1979); *People v. Peterson*, 397 Ill. App. 3d 1048, 1053 (2010). Further, to be appealable, the trial court's order dismissing the charge against a defendant does not have to state that the dismissal is "with prejudice." *Harris*, 68 Ill. App. 3d at 15. Instead, the controlling factor is whether the substantive effect of the trial court's order is to dismiss the charge. *Id.* Where the trial court gives the State a specific amount of time to file an amended charge or orders that defendant be held on bond pending further proceedings, the intent to dismiss the charge is negated by the trial court's contemplation of further proceedings and such an order is not appealable. *Id.* at 15-16. However, the mere fact that a defendant might be charged again at a later date is not controlling. *Id.* at 16.

¶ 24    In this case, the trial court dismissed, without prejudice, the charge against the defendant and released the defendant from pretrial restrictions. Although the trial court noted, when announcing its decision, that the State could refile the case, the trial court did not give the State a specific amount of time to refile or amend the charge or contemplate that further proceedings would be held. Thus, the substantive effect of the trial court's December 13, 2024, order was the dismissal of the charge against the defendant. Accordingly, we find that we have jurisdiction over the State's appeal.

10

¶ 25                          B. Discovery Violation

¶ 26    We now turn to the issue of whether the trial court abused its discretion in finding that the State committed a discovery violation. A discovery violation may be analyzed either as a due process violation under the federal and state constitutions or under Illinois Supreme Court Rule 415(g)(i) (eff. Oct. 23, 2020). *People v. Moore*, 2016 IL App (1st) 133814, ¶ 23. Here, in its initial appellant brief, the State contends that, based on the defendant's motion for sanctions, and defense counsel's arguments at the hearing on the motion, the defendant asserted a discovery violation under *Brady* and the constitution as well as under Rule 415. However, the defendant contends, in his appellee brief, that the trial court's brief remarks, at the time it dismissed the charge, against him indicated that the trial court's decision was ultimately based on Rule 415, and not on due process grounds. Thus, the defendant contends that this court should review the trial court's dismissal as a discovery sanction under Rule 415 and not as a dismissal resulting from a due process violation. Consequently, in this appeal, the defendant did not address the issue of whether the State committed a due process violation. Accordingly, as the defendant has abandoned any due process arguments that were asserted in the trial court and contends that the dismissal was based on Rule 415, this court's analysis will focus only on Rule 415.

¶ 27    We review a trial court's finding that a party committed a discovery violation for an abuse of discretion. *People v. Kladis*, 2011 IL 110920, ¶ 39. The trial court abuses its discretion only in cases where the trial court's decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court. *Id.* ¶ 42. In determining whether the trial court has abused its discretion, the reviewing court may not substitute its judgment for that of the trial court. *Kramer v. Ruiz*, 2021 IL App (5th) 200026, ¶ 37.

¶ 28    Illinois Supreme Court Rule 412 governs the State's responsibilities for disclosure to the accused. Ill. S. Ct. R. 412 (eff. Mar. 1, 2001). Specifically, Rule 412(a) requires the State to disclose, upon written motion of defense counsel, certain information within the State's possession and control, which includes any oral and written statements made by the accused and any documents or tangible objects that the State intended to use in the hearing or trial or which were obtained from or belonged to the defendant. Ill. S. Ct. R. 412(a)(ii), (a)(v) (eff. Mar. 1, 2001). The rule that the State has a duty to disclose the defendant's statements is not limited to formal statements made to the authorities, as it encompasses any statements made to anyone that might have bearing on the defendant's guilt or innocence. *People v. R.D.*, 155 Ill. 2d 122, 140 (1993).

¶ 29    In addition, Rule 412(c) requires the State to disclose any material or information within its possession or control that tends to negate the defendant's guilt as to the offense charged or tends to reduce the defendant's punishment. Ill. S. Ct. R. 412(c) (eff. Mar. 1, 2001). Further, Rule 412(f) requires the State to "ensure that a flow of information is maintained between the various investigative personnel and its office sufficient to place within its possession or control all material and information relevant to the accused and the offense charged." Ill. S. Ct. R. 412(f) (eff. Mar. 1, 2001). Thus, under Rule 412(f), the State "has a duty to use due diligence to ensure that it becomes aware of discoverable matters and must see that there is a proper flow of information between all the branches and personnel of its law enforcement agencies and legal officers." *People v. Leon*, 306 Ill. App. 3d 707, 712 (1999). Moreover, Rule 412(d) instructs that the State must perform its obligation under Rule 412 "as soon as practicable following the filing of a motion by defense counsel." Ill. S. Ct. R. 412(d) (eff. Mar. 1, 2001).

¶ 30    "A discovery rule violation by the State may occur whether or not the State's neglect was inadvertent or purposeful." *Leon*, 306 Ill. App. 3d at 713. Therefore, a court may impose

12

appropriate sanctions under Rule 415, even where there has been no showing of bad faith on the State's part. *People v. Koutsakis*, 255 Ill. App. 3d 306, 312 (1993).

¶ 31    In this case, the State contends that there was no Rule 412 discovery violation where the State had exercised due diligence and had tendered, at the time of the sanctions hearing, all of the evidence pertaining to H.H. that had been analyzed. The State also contends that it had communicated with its investigators to ensure a free flow of information and to obtain any additional available evidence. Specifically, the State notes that it had represented at the sanctions hearing that it contacted the investigator who was analyzing the materials every time defense counsel indicated that there was a discovery issue, and its investigator even authored a report explaining why certain electronic evidence may be unavailable after a download.

¶ 32    Although the State acknowledges that a discovery rule violation may be found even when the loss of evidence is inadvertent, the State contends that the record does not indicate whether any additional evidence, beyond what had already been disclosed, ever existed or that it was in law enforcement's possession. Specifically, the State notes that no evidence or information was presented at the sanctions hearing about what images, videos, text messages, or social media messages the investigator may have possessed, viewed, or downloaded, as there was no witness testimony at the hearing.

¶ 33    In addition, the State argues that, even assuming the investigator had viewed video evidence or electronic messages that were not subsequently disclosed to the defendant, there were reasonable explanations as to why the materials were no longer available at the time of the sanctions hearing. The State speculates that the investigator may have been initially able to view the images, videos, text messages, and social media messages referenced in his report before downloading them, but then, as a result of the download process, the evidence was no longer

13

available or accessible. The State further speculates that the conversations may not have been on the defendant's hard drives, phones, or other storage devices, but that the investigator was able to view the referenced posts and conversations on the defendant's various social media accounts.

¶ 34 The State contends that the record is insufficient to establish a Rule 412 discovery violation, as the precise reason for the unavailability of the additional evidence is unknown; no additional evidence was shown to be in possession of law enforcement or the State; law enforcement was still investigating, analyzing, and attempting to obtain additional evidence; and the State had an ongoing duty to disclose additional information as it became available.

¶ 35 In response, the defendant argues that the State committed a Rule 412 discovery violation because the State had a duty to disclose the substance of all oral and written statements made by the defendant and known to the State and any tangible objects that were obtained from or belonged to the defendant. The defendant notes that, when downloading data from and inspecting the seized electronic devices, the investigating officer reviewed images, videos, text messages, and social media content. The defendant argues that the State was required to disclose these materials under Rule 412 because the materials contained statements made by him and also constituted tangible objects and/or documents obtained from or belonging to him. The defendant also contends that the State was obligated to produce the requested videos and electronic messages because it had relied on this evidence in investigating and ultimately charging him. Specifically, the defendant notes that the complaint referenced the conversations conducted through social media platforms to suggest that the defendant had a mode of operation. The defendant argues that the State committed a discovery violation regardless of whether the prosecutor's office had the materials in its possession because the State was responsible for evidence possessed by law enforcement. The defendant argues that the State also violated the trial court's September 12, 2024, discovery order,

14

which required the State to provide its evidence to the defense in a complete, unredacted, and original form.

¶ 36 As for the question about the existence of the materials, the defendant argues that the record establishes that these electronic messages existed at some point, noting that the complaint for the search warrant referenced specific conversations between the defendant and H.H. as well as the defendant's other alleged victims. The defendant also argues that the State's comments at the sanctions hearing indicate that, at some point, other video evidence existed, but it was also not disclosed. The defendant contends that, in the trial court proceedings, the State appeared to concede that the State's inability to provide the requested videos and electronic messages was likely the result of the investigating officer's negligence in failing to copy or preserve the evidence when the evidence was initially reviewed.

¶ 37 After carefully reviewing the record, we conclude that the trial court did not abuse its discretion in finding that the State committed a discovery violation. In March 2023, a motion and complaint for search warrant were made requesting permission to search the various electronic devices that had been seized from the defendant's home in December 2022. The complaint described certain communications that the defendant had with various females through Snapchat. The referenced communications pertained to the defendant's alleged sexual relationships with these females and described how the defendant allegedly orchestrated unauthorized recordings of sexual conduct and/or sexual assaults. The complaint indicated that H.H. had reported that she had communicated with the defendant through Instagram, Snapchat, and text messages. During discovery, the defendant filed a Rule 412 discovery request, and the State provided defense counsel with various summary reports that contained redacted materials and heavily redacted photograph clips from a video recording. After the defendant requested that the trial court enter an order

15

compelling the State to produce the complete file, the trial court, on September 12, 2024, ordered the State to provide the defense with a "complete, unredacted set of videos, photographs, and reports from this matter."

¶ 38 Although the State then made subsequent disclosures, which included an unredacted video, defense counsel maintained that, based on the complaint for search warrant, the State had failed to produce other video evidence as well as the defendant's conversations conducted through Instagram, Snapchat, and text messages. At the hearing on the defendant's motion for sanctions, the State made some comments indicating that the video and/or electronic messages existed but explained that it did not have the materials in its possession. The State speculated that the materials could have been deleted prior to the devices being examined, the files could have been encrypted by the user, or even that the materials might be available once the investigation was complete. Thus, the record shows that the defendant and H.H. communicated through social media platforms and/or text messages and that, during the investigation into the allegations against the defendant, the law enforcement authorities relied on the defendant's conversations through these different platforms. However, these messages were never tendered to the defendant in their complete form. Moreover, based on the record and the State's comments at the sanctions hearing, there is a possibility that additional video evidence relevant to this case was not tendered to the defense.

¶ 39 The investigating authorities, who had control over and permission to search the defendant's devices since March 2023, had a duty to preserve the materials that were viewed and relied on during the investigation into the allegations against the defendant. The State also had a duty to ensure that these materials, which had already been relied on, were placed within its possession or control. However, as the State maintains that those materials are not in its possession, there is a question as to whether those materials were preserved in their original form. Regardless,

16

those materials were never disclosed to defense in discovery. Although the record does not show that the information was being deliberately withheld from the defendant, as noted above, a trial court may find that a party committed a Rule 412 discovery violation, even when there is no evidence of bad faith by that party. Based on the above, we conclude that the trial court's decision that the State committed a discovery violation was not arbitrary, fanciful, or unreasonable, or a decision where no reasonable person would take the adopted view.

¶ 40                                C. Discovery Sanction

¶ 41    After the trial court has found that a party has failed to comply with its discovery obligations, Illinois Supreme Court Rule 415(g) (eff. Oct. 23, 2020) authorizes the trial court to impose sanctions for the discovery violation. Specifically, Rule 415(g)(i) states that if a party fails to comply with its discovery obligations, the trial court may order the party "to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances." Ill. S. Ct. R. 415(g)(i) (eff. Oct. 23, 2020). Thus, the trial court is authorized to impose any sanction, which, in its discretion, it determines is just. *Koutsakis*, 255 Ill. App. 3d at 312. A trial court's decision as to the appropriate sanction for a discovery violation is subject to review for an abuse of discretion. *People v. Ramsey*, 239 Ill. 2d 342, 429 (2010).

¶ 42    However, the object and purpose of sanctions for noncompliance with discovery rules should be to compel compliance rather than to punish. *People v. Hawkins*, 235 Ill. App. 3d 39, 41 (1992). The discovery rules are intended to protect the accused against surprise, unfairness, and inadequate preparation. *People v. Robinson*, 157 Ill. 2d 68, 79 (1993). Thus, the goals for discovery are to eliminate any surprise and unfairness and to afford the parties an opportunity to investigate. *People v. Strobel*, 2014 IL App (1st) 130300, ¶ 9. Sanctions for discovery violations should be

17

used to further these goals. *People v. Rubino*, 305 Ill. App. 3d 85, 87 (1999). In addition, the sanction must be proportionate to the magnitude of the discovery violation. *In re Julio C.*, 386 Ill. App. 3d 46, 52 (2008). Since a dismissal is such a drastic sanction, it should be employed as a last resort. *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 123 (1998). To exercise sound legal discretion, the trial court should consider the available alternatives. *People v. Houser*, 305 Ill. App. 3d 384, 390 (1999).

¶ 43    Since we have determined that the trial court did not abuse its discretion in finding that the State committed a discovery violation, we must next address the issue of whether dismissal was the appropriate sanction for this discovery violation. The State argues that the trial court abused its discretion in imposing the harshest sanction available when that sanction was wholly disproportionate to the alleged violation and ignored the fact-finding and truth-seeking goals of discovery. The State contends that a continuance would have been a more appropriate sanction, as a continuance would have afforded the defendant an opportunity to investigate, to issue subpoenas for the various social media accounts, and to interview any alleged witnesses, including the investigating officer. The State argues that a continuance would have also given the State additional time to analyze the data, which was voluminous, technological, and required expertise beyond that available within the investigating agency. The State argues that since, at the time of dismissal, the case was at the pretrial stage, the defendant was not incarcerated, and the defendant had not requested a speedy trial, the defendant would not have been prejudiced by a continuance.

¶ 44    The State notes that the defendant's hard drives and accessories were still being examined and analyzed by law enforcement but argues that any remaining discovery material was neither essential nor outcome determinative. The State argues that the evidence that was "at the heart of the charge" was the video that the defendant made of H.H. without her knowledge or consent and

18

that video had already been disclosed to the defense. Also, the State notes that it had a continuing duty to disclose any additional evidence that was discovered during the ongoing investigation and that it did not intend to proceed to trial on any evidence that had not been disclosed to the defendant.

¶ 45    The defendant argues that the unpreserved material was likely pivotal to his case because the relationship between him and H.H. was mostly conducted online, and the communications between them would have provided context and information about the circumstances in which the videos of H.H. were taken and/or provided to the defendant. The defendant contends that this information would also have been highly relevant to his ability to rebut or refute the allegations of nonconsent. In addition, the defendant contends that the investigating officer referenced this evidence when discussing the defendant's mode of operation and thus it was relevant *modus operandi* evidence. The defendant disagrees with the State that a continuance would have been an appropriate sanction, noting that, at the sanctions hearing, the State repeatedly failed to provide any assurances that the requested evidence could ever be obtained, or that it could be obtained within a certain date.

¶ 46    Although the trial court here was authorized to impose a sanction pursuant to Rule 415(g)(i), we find that the sanction imposed, the dismissal of the case at the pretrial stage, was too harsh a sanction at that point in the proceedings and thus an abuse of the trial court's discretion. In making this decision, we note that there was no indication in the record that, before dismissing the case, the trial court had considered, and discarded, more moderate measures that would have furthered the purpose of discovery sanctions. Dismissing the case while the discovery process was ongoing, and the State had a continuing duty to supplement, did not promote the fact-finding process or aid in the search for the truth, both goals in the discovery process. Also, dismissal was

19

not proportionate to the magnitude of the discovery violation, especially where it was still unclear whether the evidence that the defendant sought existed and would become available as the investigating officer continued to analyze the items seized from the defendant.

¶ 47 Moreover, we note that the cases cited by the defendant, *People v. Newberry*, 166 Ill. 2d 310, 313 (1995), and *People v. Crowder*, 323 Ill. App. 3d 710, 711 (2001), are distinguishable, as those cases did not involve a Rule 412 violation. We also note that, unlike in this case, the missing evidence in those cases had definitely been destroyed. Specifically, in *Newberry*, 166 Ill. 2d at 313, 318, the supreme court held that the trial court did not abuse its discretion in dismissing defendant's drug possession charges where the substance the police seized from defendant was inadvertently destroyed after defendant had filed a discovery request for it. Similarly, in *Crowder*, 323 Ill. App. 3d at 711, 713, the appellate court concluded that the trial court properly dismissed the indictment against defendant after the gun that formed the basis for the charges of unlawful possession of weapons by a felon and willful use of weapons had been destroyed.

¶ 48 In contrast, in this case, since no testimony was presented at the sanctions hearing, we do not know, at this time, whether the evidence could be made available to the defendant in compliance with Rule 412 or whether that evidence is no longer accessible. Without further testimony or an exposition of what evidence exists, what has been lost or limited, and in what manner such evidence can be preserved or produced, the sanction imposed appears disproportionate at this time. Thus, we find that dismissal, at this point in the proceedings, was premature when there were other, less harsh sanctions available that would have furthered the goals of discovery sanctions. Where the trial court could have considered more moderate sanctions, it was an abuse of discretion to dismiss the charge against the defendant. See *People v. Forsythe*, 84 Ill. App. 3d 643, 646 (1980) (where the trial court could have considered other sanctions, such

20

as ordering a continuance so the defense could interview an informant, it was an abuse of discretion to dismiss the indictment). Accordingly, we reverse the dismissal of the charge against the defendant and remand for further proceedings, at which time the trial court can consider a sanction less severe than dismissal of the defendant's charge.

¶ 49                                    III. CONCLUSION

¶ 50    For the foregoing reasons, we reverse the trial court's order dismissing the case against the defendant and remand for further proceedings consistent with this judgment.


¶ 51    Reversed and remanded.